## PAUL E. CHRISTY AND ANOTHER v. MENASHA CORPORATION AND ANOTHER.
## H. S. HORWITZ, INC., ALSO KNOWN AS H. S. HORWITZ & SON, THIRD-PARTY DEFENDANT.

211 N. W. 2d 773.

September 28, 1973—No. 43417.

*Mahoney, Dougherty, Angell & Mahoney* and *John F. Angell,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II,* and *Mary Jeanne Coyne,* for respondent.

KELLY, JUSTICE.

The main issue in this case is whether a subcontractor is liable to a general contractor considering the particular contract of indemnity and all of the facts and circumstances involved. The initial action was brought by Paul E. Christy to recover for personal injuries received on a construction project. The action was against Rauenhorst Corporation, the general contractor for the construction of a building for Menasha Corporation in Lakeville, Minnesota.[1] Plaintiff was an employee of H. S. Horwitz, Inc., a plumbing subcontractor to Rauenhorst on the building construction.

Plaintiff was injured in the course of his employment when an employee of Rauenhorst negligently threw a plank from a second-floor window and it struck plaintiff on the head. This negligent act was allegedly the only factual and proximate cause of the plaintiff's injuries. Plaintiff received workmen's compensation benefits from Horwitz's compensation carrier prior to commencing this action.

Thereafter, Rauenhorst filed a third-party complaint against Horwitz for indemnity based on their subcontract agreement. This agreement, which was a standard form subcontract drafted by the Associated General Contractors of Minnesota, contained provisions whereby the subcontractor agreed to save the general

---

[1] Menasha Corporation was also named a defendant but was later dismissed from the suit by agreement.

contractor harmless from all responsibility and liability for damages arising out of or in any manner connected with the subcontractor's work on the project. Horwitz appeals from a summary judgment for indemnity ordered by the trial court.

A settlement of plaintiff's claim was subsequently reached whereby Horwitz, through its liability insurer, paid plaintiff $200,000 but preserved the issue of indemnity between the contractor and subcontractor on this appeal. It was also stipulated that Rauenhorst's liability insurer would have paid a judgment granted against Rauenhorst.

Horwitz raises three principal issues on this appeal: (1) Whether the provisions of the subcontract agreement require Horwitz to indemnify for damages occasioned by Rauenhorst's own negligent acts; (2) whether under the agreement Rauenhorst is entitled to a judgment of indemnity before it has suffered loss or damage; and (3) whether Rauenhorst's insurer is equitably subrogated to its cause of action for breach of the indemnity agreement.

■ Horwitz argues that the indemnity provisions of the standard form subcontract agreement were intended to apply only to damages resulting from activities within the control of and caused by Horwitz and not to indemnify Rauenhorst for its own negligence. The provisions of the subcontract pertinent to the responsibility of the parties for losses and damages are contained in several different clauses each relating to particular liabilities. Article VI of the agreement provides that Horwitz would save Rauenhorst, as well as other subcontractors, harmless from losses occasioned by failure to fulfill the subcontract unless it was beyond the control of Horwitz. Article VIII specifies that Horwitz is responsible for cleaning up and repairing damages occasioned by its own work on the project. Article IX imposes a duty on Horwitz to adequately protect its work and to be responsible for damages caused by its noncompletion.

In addition to these particularized responsibilities, the subcontract contains a general liability provision. The first para-

graph of Article VII requires Horwitz to acquire certain compensation and liability insurance in specified amounts. The second paragraph of this article reads in pertinent part:

"The Sub-Contractor agrees to assume entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of, resulting from or in any manner connected with the execution of the work provided for in this Sub-Contract * * * and the Sub-Contractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be, or may be claimed to be, liable * * *."

We believe this language is sufficiently broad and inclusive to require indemnity for injuries suffered by an employee of Horwitz on the construction site in the course of his employment, even though the particular injury was caused by the negligence of Rauenhorst. Although other articles of the agreement relating to liability for particular damages refer to matters within the subcontractor's control, the broad language of Article VII is not modified or limited so as to require that the damages or injury under that provision must arise from matters within the control of the subcontractor. Under Article VII, the subcontractor agrees, without limitation, to indemnify for all damages or injuries "arising out of, resulting from or in any manner connected with" the work being performed under the subcontract. An injury to an employee performing work for the subcontractor at the construction site comes within this language regardless of the injury's cause.

Horwitz argues that in our recent decision of Kehne Elec. Co. Inc. v. Steenberg Const. Co. 287 Minn. 193, 177 N. W. 2d 309 (1970), we interpreted this same standard subcontract agreement as intending to provide indemnity only for damages arising from causes within the control of the subcontractor. In that decision we construed the subcontract in relation to a general con-

tract in determining who was responsible for flood damage to the construction project. In the course of holding that the subcontractor was not responsible for acts of God, we observed:

"The subcontract contains explicit references to the subcontractor's liability for damage *caused by forces within its control* but, unlike the general contract, it is conspicuously silent regarding responsibility for acts of God * * *." (Italics supplied.) 287 Minn. 198, 177 N. W. 2d 311.

In Kehne we were considering only the responsibility for an act of God and not ruling on the construction of Article VII in the present context. Flood damage cannot be said to arise out of "the execution of the work provided for in the Sub-Contract." That situation is distinguishable from the present case where the subcontractor's employee was injured while on the job site performing work under the subcontract. It follows that the injuries arose out of or at least were connected with the work.

It is also argued that causation is a prerequisite to an indemnitor's liability under an express contract of indemnity. We have consistently rejected this argument following our decision in N. P. Ry. Co. v. Thornton Bros. Co. 206 Minn. 193, 198, 288 N. W. 226, 228 (1939), where we stated:

"* * * Such loss or damage, to be within the bond, must arise 'in any manner out of or in any manner connected with the said work.' That is general and inclusive verbiage, not to be limited by arbitrary, strict construction * * *. It is perfectly obvious that [the subcontractor's] pile driver was engaged in the 'work,' and that in a practical manner the damage arose out of or at least was connected with the work."

Horwitz has advanced no compelling reason why we should alter our view that a party may contract to indemnify another for damage or injury caused by the negligence of the indemnitee and beyond the control of the indemnitor. We conclude that reading the subcontract as a whole, the wording of Article VII of the agreement is sufficiently broad and inclusive and was intended

to provide indemnity for an injury such as occurred in this case.

■ Horwitz next argues that the summary judgment granting indemnity was premature in that Rauenhorst had suffered no loss at the time it was granted. In support of this contention, a number of Minnesota cases are cited which held that an indemnitee cannot recover until payment has been made or loss or damage has otherwise occurred. E. g., Aetna Cas. & Surety Co. v. Bros, 226 Minn. 466, 33 N. W. 2d 46 (1948); Walsh v. Featherstone, 67 Minn. 103, 69 N. W. 811 (1897); Campbell v. Rotering, 42 Minn. 115, 43 N. W. 795 (1889).

However, this general rule that loss must be first incurred is not applicable to all types of indemnity contracts. The entire rule is stated in 41 Am. Jur. 2d, Indemnity, § 28, as follows:

"The necessity for actual damage to the indemnitee as a condition to the liability of the indemnitor depends upon the terms or conditions contained in the contract, actual damage being required in the case of a strict contract of indemnity against *loss or damage*, but none in the case of indemnity against mere *liability*." (Italics supplied.)

Accord, Aetna Cas. & Surety Co. v. Bros, *supra*. The cases cited by Horwitz concern strict contracts of indemnity for loss or damage, whereas the present case involved a contract for indemnity against liability or claims. When the indemnity contract is one against mere liability, an action may be brought as soon as the liability is legally imposed, e. g., when judgment is entered. 41 Am. Jur. 2d, Indemnity, § 31; Chernin v. International Oil Co. 261 Wis. 543, 53 N. W. 2d 425 (1952).

In the present case, Horwitz, in substance and effect, agreed to assume entire responsibility for all damages or injuries to persons whether employees or otherwise and to save Rauenhorst harmless from all such claims including claims for which the contractor may be, or may be claimed to be, liable. Thus, the agreement was to indemnify not just against loss or damage but also against mere claims, and a fortiori must be construed to be

an indemnity agreement against accrued liability as well as against loss or damage. The indemnity agreement being one for claims, it should be assertable when such a claim is made and it was appropriate to do so in plaintiff's suit against Rauenhorst.[2] Furthermore, it is in the interest of judicial economy that Rauenhorst's indemnity claim be presented together with the plaintiff's claim in the same proceedings.[3]

While it is true that the settlement of plaintiff's claim in the present case did not occur until after summary judgment was ordered, the relief requested by Rauenhorst in its third-party complaint was that in the event it was adjudged liable to plaintiff that it have judgment of full indemnity from Horwitz together with costs, disbursements, and attorneys' fees. The summary judgment merely construed the indemnity agreement. Such a declaration of the parties' rights and liabilities under the subcontract is not held to be defective merely because it was entered prior to the settlement where Horwitz agreed to indemnify Rauenhorst against such a claim as plaintiff's. Besides, it would be an exercise in futility to remand the case to have the summary judgment voided as premature and a new judgment immediately entered awarding indemnity to Rauenhorst.

---

[2] See, 41 Am. Jur. 2d, Indemnity, § 31: "A mere claim or demand against an indemnitee when no legal liability exists does not give rise to a right to indemnity under an agreement to indemnify against liability in the sense of accrued liability. Where, however, the contract is so expressed as to protect the obligee against any claim, suit, or demand, even the institution of a suit against the obligee has been held to entitle him to an action against his guarantor."

[3] In Gustafson v. Johnson, 235 Minn. 358, 372, 51 N. W. 2d 108, 116 (1952), this court said, "* * * We therefore hold that, subject to the exercise of the sound discretion of the trial court, on motion of a defendant in a tort action, a third party who may become liable to the original defendant for contribution or indemnity may be brought in as a third-party defendant."

It follows that if a party who may become liable for indemnity can be brought in as a party defendant, the rights of the parties should be determined in that same proceeding.

■ Horwitz's final argument is that Rauenhorst's insurer is not entitled to maintain a subrogation action in the name of its insured. It argues that the sole cause of the loss to the insurance company was the negligence of Rauenhorst and not the failure of Horwitz to provide indemnity. It concludes that since the insurer was not a party to the subcontract, it cannot sue under it to enforce the indemnity provisions.

A subrogee stands in the same shoes as the insured and acquires all the rights he may have against third parties. Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 111 N. W. 2d 620 (1961); 18 Dunnell, Dig. (3 ed.) § 9044. Whenever the right to subrogation is created, the subrogee is entitled to enforce any rights which the insured may hold against others involved in the claim. No privity of contract is needed between the subrogee and the third party to enforce a collateral contract bearing on the claim.

Horwitz's argument appears to be that when the damage is occasioned by the insured's own negligence, the insurance company should not be entitled to enforce the indemnity agreement. as discussed previously, merely because the damage results from the indemnitee's own negligence does not prevent recovery on an express contract which is broad enough to include such damages. There is no reason why a subrogee cannot step into these same shoes.

Other jurisdictions under similar facts have found that a subrogee is entitled to enforce an indemnity agreement between a subcontractor and contractor even when the damage is occasioned by the insured's own negligence. The rights of the subrogee in such an instance are the same as the insured himself would have in that jurisdiction. General Acc. Fire & Life Assur. Corp. v. Smith & Oby Co. 272 F. 2d 581 (6 Cir. 1959); Hartford Acc. & Ind. Co. v. Worden-Allen Co. 238 Wis. 124, 297 N. W. 436 (1941). See, Employers Mutual Lia. Ins. Co. of Wis. v. Griffin Const. Co. 280 S. W. 2d 179, 53 A. L. R. 2d 967 (Ky. 1955). We conclude that Rauenhorst's insurer has a right to enforce the

indemnity provisions of the subcontract in the same manner as Rauenhorst

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.