KERMIT ANSTINE, JR. v. LAKE DARLING
RANCH, INC., AND ANOTHER.
EGAN & SONS COMPANY AND OTHERS,
THIRD-PARTY DEFENDANTS.

233 N. W. 2d 723.

August 29, 1975—No. 45584.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *Stephen F. Rufer,* for appellant.

*Lommen & Cole* and *Phillip A. Cole,* for respondent Pella Products, Inc.

*Richard D. Allen* and *Mark N. Stageberg,* for respondent Thompson Lightning Protection, Inc.

*Field, Arvesen, Donoho, Lundeen & Hoff* and *Norman D. Arvesen,* for respondent Custom Pools, Inc.

*Faegre & Benson* and *George Flynn,* for respondent Gust Lagerquist & Sons, Inc.

*Bey, Ochs & Klimek* and *Gerard J. Ochs,* for respondent Arrigoni Brothers Co.

*Halverson, Watters, Bye & Downs* and *Anthony S. Downs,* for respondent Acoustics Associates, Inc.

*Richards, Montgomery, Cobb & Bassford* and *Jerome C. Briggs,* for respondent The Engelen Twin City Co.

*McLarnan & Stefanson* and *R. B. McLarnan,* for respondent Glenmar-Hutchinson Co.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal by defendant and third-party plaintiff, Lund-Martin Construction Company, from orders of the District Court of Douglas County granting motions for summary judgment made by a number of third-party defendants and from judgments entered pursuant to said orders.

We affirm.

Summary judgment has been entered in favor of the following third-party defendants-respondents: Acoustics Associates, Inc., Arrigoni Brothers Company, Custom Pools, Inc., Engelen Twin City Company, Glenmar-Hutchinson Company, Gust Lagerquist & Sons, Inc., Pella Products, Inc., and Thompson Lightning Pro-

tection, Inc.[1] Third-party defendant Spancrete-Midwest also moved for summary judgment, but the motion has apparently not been ruled on by the trial court. Third-party defendants Egan & Sons Company, Egan-McKay Electrical Contractors, and Randy Whitehead did not move for summary judgment.

This is a personal injury action commenced by Kermit Anstine, a workman at the Lake Darling Ranch construction site, against the owner of the project and Lund-Martin Construction Company, the prime contractor. Lund-Martin joined all of the subcontractors connected with the prime project as third-party defendants, seeking indemnity from them.

The accident which caused this injury occurred on October 8, 1969, when Anstine, a plumber apprentice employed by third-party defendant Egan & Sons Plumbing and Heating Company, fell off the roof of a building under construction at the project site. The roof was wet at the time and plaintiff slid off it when he crawled upon a piece of loose cedar shingle, apparently left lying upon the roof by the employees of Randy Whitehead, a roofing subcontractor.

The project under construction was rather large, consisting of several separate buildings constituting restaurant, convention, and living unit facilities, and construction was carried on over a substantial period of time. Lund-Martin entered into identical standard Minnesota Associated General Contractors (AGC) subcontract agreements with all of the subcontractors named here as third-party defendants. Each of these subcontracts contained an indemnity clause that forms the basis of Lund-Martin's third-party indemnity claims. In order to simplify the complicated facts, the various subcontractors, the work done by them, and

---

[1] Summary judgment was also entered in favor of third-party defendant Anderson-Ladd, Inc., which is not a party to this appeal.

the dates on which they entered into the subcontracts with Lund-Martin are summarized below:

| Subcontractor | Type of Work | Date Subcontract Signed | Working on Site at time of Accident? |
|---|---|---|---|
| Custom Pools, Inc. | construction of swimming pool | July 18, 1969 | No |
| Thompson Lightning Protection, Inc. | installing lightning protection devices | May 13, 1969 | No |
| Pella Products, Inc. | installation of windows | July 18, 1969 | No |
| Gust Lagerquist & Sons, Inc. | installation of elevators | June 2, 1969 | No |
| Acoustics Associates, Inc. | acoustical and resilient floor work | August 11, 1971 | No |
| Arrigoni Bros. | tile work | February 16, 1971 | No |
| Engelen Twin City Company | bituminous work in drive and park | March 31, 1971 | No |
| Glenmar-Hutchinson Co. | installation of folding walls | June 17, 1971 | No |

The legal issue raised on this appeal is: Under a subcontract which provides that a subcontractor shall indemnify the general contractor for liability for injury to persons "arising out of, resulting from or in any manner connected with, the execution of the work provided for in this Sub-Contract," is a subcontractor liable to indemnify the prime contractor for liability for all injuries arising out of the entire construction project, without regard to whether the parties had entered into the subcontract

at the date of the injury, whether the subcontractor was working on the site at the time of the injury, and whether there was any causal connection between the work performed by the subcontractor and the injury?

The form of indemnity clause used in all the contracts involved in these appeals was Article VII of the AGC standard form subcontract, which provides as follows:

"The Sub-Contractor agrees to assume entire responsibility and *liability for all damages or injury to all persons, arising out of, resulting from or in any manner connected with, the execution of the work provided for in this Sub-Contract* or occurring or resulting from the use by the Sub-Contractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Sub-Contractor or third parties, and the Sub-Contractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be, or may be claimed to be, liable, and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph, and the Sub-Contractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph." (Italics supplied.)

Appellant asks this court to construe that language to mean that all of the subcontractors working on the construction site formed a pool for the benefit of the general contractor and must be held liable to indemnify the general contractor for all personal injuries arising out of the entire construction project. Appellant contends that the phrase "work provided for in this Sub-Contract" refers to the entire project and not just the items of work to be performed by the subcontractor signing each particular subcontract. Appellant expressly contends that it is irrelevant whether any of the subcontractors had entered into their subcontracts at the time of the accident, whether they were

working on the project at the time in question, and whether their actions had any causal connection with plaintiff's accident.

Appellant apparently suggests that it should be entitled to summary judgment. It did move for judgment on the pleadings in the trial court. In the alternative, appellant suggests that the matter be remanded for trial to determine as a question of fact the intention of the parties in entering into the subcontract provisions.

Appellant's entire argument is grounded upon two recent decisions of this court involving the same provision of the standard AGC subcontract: Christy v. Menasha Corp. 297 Minn. 334, 211 N. W. 2d 773 (1973), and Jacobson v. Rauenhorst Corp. 301 Minn. 202, 221 N. W. 2d 703 (1974).

In each of those cases, this court held that the prime contractor was entitled to indemnity from a subcontractor whose employee had been injured on the job, even though the cause of the injury in each case was the negligence of the prime contractor. Since the injury in each case arose out of the specific work performed by the specific subcontractor from whom indemnity was sought, whether other subcontractors whose work had no relation to the injury could be required to indemnify the prime contractor was not in issue.

The rationale employed by the court in those two cases was derived from the earlier decision of N. P. Ry. Co. v. Thornton Bros. Co. 206 Minn. 193, 288 N. W. 226 (1939). There the court held that a similar indemnity clause was not contrary to public policy when interpreted so as to indemnify a negligent contractor. The court rejected the "strict construction" rule which states that a general indemnity clause does not apply to liability based upon the indemnitee's fault unless the contract language expressly so provides.[2]

There is nothing in Christy, Jacobson, or, the Northern Pacific case which persuades acceptance of the rule that appellant urges

---

[2] That remains the majority rule. See, Annotations, 27 A. L. R. 3d 663, 143 A. L. R. 312; 41 Am. Jur. 2d, Indemnity, § 15.

this court to adopt. On the contrary, there is dictum in Christy from which one can imply that the court assumed that the clause in question would not apply where there is no temporal, geographical, or causal nexus between the subcontractor's work and the injury which gives rise to liability. Our court said in the Christy case:

"* * * Under Article VII, the subcontractor agrees, without limitation, to indemnify for all damages or injuries 'arising out of, resulting from or in any manner connected with' the work being performed under the subcontract. An injury to an employee performing work for the subcontractor at the construction site comes within this language regardless of the injury's cause." 297 Minn. 337, 211 N. W. 2d 775.

Appellant argues that the provision for indemnity in the subcontractors' contracts is ambiguous. We do not believe it is. It seems clear to us that indemnity was intended only where there is a temporal and geographical or a causal relationship between the subcontractor's work and the injury giving rise to the liability, and we so hold.

The accident that befell the plaintiff would have occurred even if none of these eight subcontractors had ever been employed to work on the project.[3] Thus, it is wholly unreasonable to say that his injury arose out of or was connected with their work, for the work under their subcontracts was not a "but for" cause of the injury.

It appears to us likely that the clause adopted was intended by the General Contractors Association to protect prime contractors against the substantial liability they might incur because of on-the-job injuries to the subcontractors' employees. The exclusive remedy provisions[4] of the Workmen's Compensation Act

---

[3] Appellant attempts to establish causation by arguing that the project could not have been constructed without the subcontractors. The fallacy is obvious; appellant could have employed other contractors or employed the workmen directly.

[4] Minn. St. 176.031.

prevent an injured workman from suing his employer, the subcontractor, but permit him to sue third parties, including the prime contractor whose negligence caused or contributed to cause the injury. The prime contractor's ability to seek indemnity from the subcontractor in such cases is quite limited, even though the primary negligence was that of the subcontractor, unless there is an express indemnity clause in the subcontract.[5] For a discussion of the prime contractor's right to indemnity in such cases, see Keefer v. Al Johnson Const. Co. 292 Minn. 91, 193 N. W. 2d 305 (1971). The intent of the clause was probably to require each subcontractor to bear the cost of injuries to his own workers, not to make each subcontractor an insurer for all injuries.

Moreover, by its own admission, appellant's proposed interpretation would make each subcontract in effect one of insurance. As the subcontractors are not licensed as insurers under Minn. St. c. 60A, such an interpretation might undermine the insurance regulatory scheme and contravene public policy.

Other courts have refused to adopt a broad interpretation of such indemnity clauses on similar policy grounds, not wishing to construe the contract so as to void it or render the indemnitor's conduct criminal.[6]

---

[5] In 1969, the legislature amended the Workmen's Compensation Act so as to preclude a third party from seeking indemnity from an employer covered by the act in the absence of an express indemnity agreement. L. 1969, c. 936, § 4. This provision was in effect when several of the subcontractors in this case entered into their subcontracts, though it was later struck down as unconstitutional. See, Carlson v. Smogard, 298 Minn. 362, 215 N. W. 2d 615 (1974). While in effect, the statute must have greatly increased the use of indemnity clauses like those in the AGC subcontract.

[6] Several courts have used the distinction between insurance and indemnity as a basis for the rule that an indemnity agreement does not extend to losses caused by the indemnitee's negligence. See, e.g., Union Pacific R. Co. v. Bridal Veil Lbr. Co. 219 F. 2d 825 (9 Cir. 1955); Brotherton Const. Co. v. Patterson-Emerson-Comstock, Inc. 406 Pa. 400, 178 A. 2d 696 (1962).

It seems clear that a contract which requires the indemnitor to indemnify the indemnitee for losses with which the indemnitor had no connection and over which it had no control would be a contract of insurance.[7] The point was clearly articulated in Brotherton Const. Co. v. Patterson-Emerson-Comstock, Inc. 23 Pa. D. & C. 783, 784 (1961), in language subsequently adopted by the Pennsylvania Supreme Court on appeal, Id. 406 Pa. 400, 178 A. 2d 696 (1962), as follows:

"Contracts of indemnity are not contracts of insurance: [Citations omitted].

"They are usually intended to provide against loss or liability of one party through the operation of the other, or caused by physical conditions which are under the control of the other and over which the party indemnified has no control, and are not ordinarily construed as covering liability for injuries or accidents the proximate cause of which is the negligence of the party indemnified: [Citation omitted]."

Christy and Jacobson do imply that an indemnity contract which covers liability arising out of the indemnitee's negligence is not a commercial insurance contract. The approach of those cases may be more liberal than that adopted in Pennsylvania, but in fact in both cases there was a temporal and geographic relationship between the work of the subcontractor and the loss for which the contractor sought indemnity. Appellant here offers no rationale for extending Christy and Jacobson so as to reject altogether the Pennsylvania court's distinction between the two types of contracts. A contract which permits indemnity where the indemnitor's conduct bears no relationship to the loss provides for indemnity for hire, rather than equitable indemnity,

---

[7] Minn. St. 60A.02, subd. 3, defines insurance as "any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage."

and seems to be a commercial insurance contract subject to the laws regulating the insurance business.[8] In construing the indemnity provision of the AGC contract, it should not be presumed that the parties entered into a contract of insurance in violation of Minn. St. c. 60A.[9]

Affirmed.

---

[8] The problem also arises in the context of "warranties." The major distinction between a warranty and a contract of insurance seems to be that a warranty promises to indemnify only those losses arising out of defects in the product, while insurance would indemnify against perils outside of and unrelated to defects in the property in question. See, e. g., State of Ohio ex rel. Duffy v. Western Auto Supply Co. 134 Ohio St. 163, 16 N. E. 2d 256 (1938); Ollendorff Watch Co. v. Pink, 279 N. Y. 32, 17 N. E. 2d 676 (1938).

[9] Moreover, if this were to be interpreted as a contract of commercial insurance, it might be void for want of consideration. No premium was paid and it is difficult to see how the contractor's promise to pay the subcontractor for work done on the project could constitute consideration for the subcontractor's promise to insure the contractor against all liability connected with the entire project.