Robert J. JOHNSON et al., Plaintiffs,

v.

McGOUGH CONSTRUCTION CO., INC., defendant and third party plaintiff, Respondent,

v.

HANKEE HEATING CO., INC., third party defendant, Appellant,

Acme Sheet Metal Co., Third Party Defendant.

No. 50267.

Supreme Court of Minnesota.

May 23, 1980.

Rehearing Denied July 8, 1980.

Castor, Ditzler & Klukas and Jerome R. Klukas, Minneapolis, for appellant.

Jardine, Logan & O'Brien, Donald M. Jardine and Carol A. Hooten, St. Paul, for McGough Const. Co.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson, II, Minneapolis, for Acme Sheet Metal Co.

Robins, Davis & Lyons and John Brian, II, Minneapolis, for Johnson, et al.

Lommen, Cole & Stageberg and Phillip A. Cole, Minneapolis, for Iowa Nat'l Mut. Ins. Co.

Heard before ROGOSHESKE, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Third-party defendant, Hankee Heating Co., Inc., appeals from a judgment of the district court entered pursuant to an order granting the motion of third-party plaintiff, McGough Construction Co., Inc., for summary judgment. The principal issue raised is whether the subcontract agreement between the parties expressly provides that the subcontractor will indemnify the general contractor for damages due to injury caused by the general contractor's negligence when the injury is causally related to performance of the subcontract. We conclude that it does and, therefore, affirm.

McGough Construction Co., Inc. (McGough) was the general contractor for the construction of St. Peter's Parish Center in North St. Paul. McGough entered a standard Associated General Contractors subcontract agreement with Hankee Heating Co., Inc. (Hankee) on July 23, 1971, for performance of the mechanical work on the project. Hankee, in turn, hired Acme Sheet Metal Co. (Acme) to install the heating and ventilating duct work.

McGough maintained a construction site trailer containing blueprints and a telephone approximately 100 feet from the worksite. On the morning of January 18, 1972, plaintiff Robert Johnson, an Acme employee, used the trailer telephone with the permission of McGough's supervisor to notify his employer of a problem in installing the ventilating equipment. While walking up the inclined path to return to the worksite, Johnson slipped and fell on ice, allegedly injuring his arms. It is undisputed that McGough was responsible for maintaining the pathway.

Johnson commenced an action for personal injury against McGough on April 22, 1977. On September 28, 1978, McGough tendered defense of the suit to Hankee. McGough also commenced a third-party action against Hankee and Acme. McGough and Hankee made cross-motions for summary judgment. The district court granted McGough's motion, judgment was entered, and Hankee appealed.

The standard Associated General Contractors subcontract agreement entered by McGough and Hankee contains the following indemnity provision:

The Sub-Contractor agrees to assume entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of, resulting from or in any manner connected with, the execution of the work provided for in this Sub-Contract or occurring or resulting from the use by the Sub-Contractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Sub-Contractor or third parties, and the Sub-Contractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including without limiting the generality of the foregoing, claims for which the Contractor may be, or may be claimed to be, liable, and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph, and the Sub-Contractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph.

We have construed the identical provision in prior cases. In *Christy v. Menasha Corp.,* 297 Minn. 334, 211 N.W.2d 773 (1973), and *Jacobson v. Rauenhorst Corp.,* 301 Minn. 202, 221 N.W.2d 703 (1974), we applied a rule of "fair construction"[1] and held that the wording was sufficiently broad and inclusive and was intended to require the subcontractor to indemnify the general con-

---

1. See *N. P. Ry. Co. v. Thornton Bros. Co.,* 206 Minn. 193, 288 N.W. 226 (1939).

tractor for damages sustained by an employee of the subcontractor even though the injury was caused by the negligence of the general contractor. In *Anstine v. Lake Darling Ranch*, 305 Minn. 243, 233 N.W.2d 723 (1975), we emphasized that our rule was not the majority rule of "strict construction" and held that the provision intended indemnity only where a temporal and geographical or a causal relationship existed between the subcontractor's work and the injury.

Our most recent decision in this area, *Farmington Plumbing v. Fischer Sand*, 281 N.W.2d 838 (Minn.1979), involved a different provision. In that case we re-examined our rule of construction and rejected the "fair construction" rule in favor of the majority position, stating that "[i]ndemnity agreements are to be strictly construed when the indemnitee * * * seeks to be indemnified for its own negligence. There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." 281 N.W.2d 842. We expressly overruled *Anstine, Jacobson*, and *Christy* to the extent that they rejected the strict construction rule.

We now must determine whether the Associated General Contractors' indemnity provision which we have enforced under the "fair construction" rule also meets the more stringent requirements of the "strict construction" rule.[2] A review of the case law does not reveal any provision sufficiently similar to suggest a conclusion. The provision states that the subcontractor will "assume entire responsibility and liability for all damages" and will "indemnify and save harmless the Contractor * * * from all such claims including, without limiting the generality of the foregoing, *claims for which the Contractor may be, or may be claimed to be, liable*." (Emphasis added.) This language necessarily includes claims of the contractor's negligence. We cannot agree that specific reference to "negligence" would more clearly express an in-

demnitor's obligation since then the question would arise whether the provision was limited to liability only for negligence. We hold that the provision considered as a whole clearly and unequivocally states the intent that the indemnitor is liable to the indemnitee for its negligence.

Hankee also argues that the *Anstine* requirement of a temporal and geographical or causal relationship between the subcontractor's work and the injury is lacking. We find no merit to the argument. Johnson's injury occurred while he was performing the work called for by the subcontract, thus a "but for" causal connection existed. That work was an essential part of the contractual duty owed by Hankee to McGough and McGough required the indemnity provision to cover performance of that duty. Hankee's choice to hire Acme did not result in Johnson's occupying a different position vis-a-vis McGough than a subcontractor's worker within the meaning of *Anstine*.

Affirmed.

---

2. *See Sargent v. Johnson*, 601 F.2d 964 (8th Cir. 1979).