Allen D. FOSSUM, et al., Plaintiffs,

v.

KRAUS–ANDERSON CONSTRUCTION COMPANY, Defendant and Third Party Plaintiff, Respondent,

v.

EGAN & SONS AIR CONDITIONING CO., et al., Third Party Defendants, Appellants.

No. C6–85–684.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Thomas L. Johnson, Minneapolis, for respondent.

Robert Birnbaum, Stephen L. Liebo, Minneapolis, for appellants.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This appeal is from a summary judgment granted in favor of a general contractor against his subcontractor requiring the subcontractor to indemnify the general contractor. We reverse.

## FACTS

Plaintiff was a foreman supervising sheet metal workers for Egan and Sons and Egan-Emde (Egan) air conditioning subcontractors working on the Pillsbury Center project covering the entire city block between second and third avenues and fifth and sixth streets in Minneapolis. Kraus-Anderson was the general contractor for the project and had surrounded the block with fence to control access. On the south side the fence took up most of the north lane of sixth street. Pedestrian gates were located at all corners for use by workmen. Workers were instructed to use pedestrian gates, but frequently ignored the instructions and used the truck exit, or construction gate, because it was convenient.

When plaintiff left work to go home, he walked out the construction gate onto sixth

street. He was standing near the fence when a car that had stopped for him was rearended by another car, pushing the first car into plaintiff and injuring his leg.

Plaintiff sued Kraus-Anderson for negligent placement of the gate. Kraus-Anderson brought a third-party action against Egan for indemnity under Article VII of the subcontract. The injured plaintiffs have settled and are not a party to this appeal.

## ISSUE

Did the trial court err in granting summary judgment to Kraus on the basis of indemnity.

## ANALYSIS

Article VII of the Subcontract Agreement between Egan and Kraus provides in part:

> The Subcontractor agrees to assume entire responsibility and liability for all damages or injuries to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this subcontract * * * and the Subcontractor agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims, including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be liable * * *.

The Minnesota Supreme Court has held that Article VII requires a subcontractor to indemnify a general contractor for damages caused by the general contractor's own negligence. *Johnson v. McGough Construction Co., Inc.,* 294 N.W.2d 286 (Minn.1980); *Jacobson v. Rauenhorst Corp.,* 301 Minn. 202, 221 N.W.2d 703 (1974); *Christy v. Menasha Corp.,* 297 Minn. 334, 211 N.W.2d 773 (1973).

The question here, however, is whether the words "arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this contract * * * " apply where a worker has left the job site and is injured.

In *Anstine v. Lake Darling Ranch,* 305 Minn. 243, 233 N.W.2d 723 (1975), the Supreme Court defined the purpose and intent of an indemnity agreement to be protection of the prime contractor against the substantial liability it might incur because of on the job injuries to the subcontractor's employees. Respondent argues that the purpose and intent is further to make each subcontractor bear the cost of injuries to its own workers.

Considering the scope of the indemnity, the *Anstine* court held that where there is either a temporal and geographical or a causal relationship between the subcontractor's work and the injury, the indemnity provision applies.

In determining whether contractual indemnity is allowed, courts should determine whether the indemnity sought would be within the scope of equitable indemnity or would instead be indemnity for hire. *Id.* at 251, 233 N.W.2d at 729.

The general rule is that "tortfeasors must accept responsibility for damages commensurate with their own relative culpability * * *." They are not entitled to indemnity for damages caused by their own negligence. *Farmington Plumbing and Heating Co. v. Fischer Sand and Aggregate, Inc.,* 281 N.W.2d 838, 841 (Minn. 1979); *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977). Therefore, indemnity agreements are strictly construed when the indemnitee seeks to be indemnified for his own negligence. *Farmington* at 842.[1]

The Minnesota Supreme Court has only found the connection between the injury and the "execution of the work" *present*

---

**1.** The rule of strict construction has been limited further by the Minnesota Legislature. Minn. Stat. § 337.01 et seq. provides that indemnification agreements in building and construction contracts executed on or after May 1, 1984 are unenforceable except to the extent of the promisor's own negligence.

where an employee of the subcontractor has sustained injuries while on the job site. *Christy v. Menasha Corp.*, 297 Minn. 334, 211 N.W.2d 773 (1973); *Jacobson v. Rauenhorst Corp.*, 301 Minn. 202, 221 N.W.2d 703 (1974); *Johnson v. McGough Construction Co., Inc.*, 294 N.W.2d 286 (Minn. 1980).

In *R.E.M. IV Inc. v. Robert F. Ackermann & Associates, Inc.*, 313 N.W.2d 431 (Minn.1981), damages occurred to plaintiff's property after construction was completed and the subcontractor was no longer at the site. The court construed "execution of the work" under the contract to be the equivalent of "the performance of the work." *Id.* at 434.

The *R.E.M.* court recognized that this interpretation was not dispositive because the indemnity provision covered damages "arising out of * * *, resulting from or in any manner connected with, the execution of the work." In determining whether damage occurring after completion of the work falls within the contractual language, the Supreme Court looked to the *Anstine* requirements of a "temporal and geographical or a causal relationship between the subcontractor's work and the injury giving rise to the liability." *Id.* at 434.

 The same analysis must be applied in the instant case. Since plaintiff had completed his work and left the job site to go home, there was no temporal and geographical relationship between performance of the subcontractor's work and plaintiff's injury. Since plaintiff had finished his employer's work for the day, there was no causal relationship between performance of the work and his injuries.

The case of *Turner Construction Co. v. The Belmont Iron Works*, 158 F.Supp. 309 (E.D.Pa.1957), relied on by the trial court is factually distinguishable. There the death of the worker occurred on the job site where the subcontractor's work was being performed. Here Fossum was injured in the north lane of sixth street in Minneapolis when he was struck by a car after he had finished his day's work. The workers' compensation cases cited by respondent which find temporal and geographical connections to the injury while coming to the job site are inapplicable to determine, and strictly construe, the contract language before us.

## DECISION

The trial court erred in granting summary judgment to the general contractor on the basis of indemnity under Article VII of the standard subcontractor's agreement.

Reversed.