**GELCO CORPORATION, Appellant,**

v.

**CRYSTAL LEASING, INC., Respondent.**

**No. C7–86–624.**

Court of Appeals of Minnesota.

Nov. 25, 1986.

Allen I. Saeks, Nancy A. Welsh, Leonard, Street & Deinard, Minneapolis, for appellant.

Stanley Efron, Lee F. Arnold, Henson and Efron, Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Respondent claimed that appellant improperly drew $16,344 on the letter of credit provided for by contract between the parties. Appellant failed to file an answer to respondent's summons and complaint and did not appear at trial. Respondent's motion for a default judgment was granted. On March 11, 1986 appellant's subsequent motion to vacate the default judgment was denied. Because we believe the trial court was correct in finding that ap-

pellant did not have a reasonable defense on the merits, we affirm.

## FACTS

On June 16, 1982 appellant Gelco Corporation (Gelco) and respondent Crystal Leasing, Inc. (Crystal) entered into a contract under which appellant Gelco purchased certain assets of respondent Crystal's truck leasing business. Those assets included truck leases. At issue here is the propriety of a $16,344 draw against a letter of credit provided for by the contract between the parties.

Some of the assigned leases provided for sale of the leased vehicles upon termination of the lease at a price below listed book value, referred to in the contract as Schedule A Value. Thus, if the lessee under one of these leases exercised its option at the termination of the lease, appellant would suffer a loss because it would be forced to sell at a price below book value. To compensate for this problem the parties' contract included a provision providing for a letter of credit. The relevant provisions of the contract on this issue are paragraphs 4A and 19.

Paragraph 4A required respondent to provide appellant with a letter of credit to "serve as an indemnity fund * * * to indemnify, defend and hold Buyer (appellant) harmless against and in respect of * * * any risk which Buyer (appellant) may in fact incur as a result of the exposure detailed in Paragraph 19."

Paragraph 19 provided that:

Seller (respondent) agrees to pay Buyer (appellant) on demand the difference between the Schedule A Value (lessee's lower than book value price) and the Book Value of each of the Leased Vehicle for which each of the following conditions shall exist:

(a) The Truck Lease shall be terminated after the Effective Date for any reason whatever by either party,

(b) The Book Value for such Leased Vehicle is more than its Schedule A Value, and

(c) The lessee under the applicable Truck Lease has the right, option or obligation to purchase the Leased Vehicle.

On September 5, 1984 Robel Beef Packers (Robel) notified appellant that it wished to cancel its lease for twelve vehicles it had originally leased from respondent. Robel terminated its lease for two of these vehicles on February 22, 1985 and then terminated its lease for the other ten vehicles on March 31, 1985. At this point appellant had the option to demand that Robel purchase the twelve vehicles at Schedule A prices. Robel also had the option to demand that appellant sell Robel the twelve vehicles at Schedule A prices. The Schedule A prices were lower than the Book value. The difference in prices was $16,344. Neither appellant nor Robel exercised their options. Robel never purchased the twelve vehicles.

Appellant notified respondent that it intended to make a draw on the letter of credit in the amount of $16,344. Appellant claimed that paragraphs 4A and 19 of the contract protected appellant from the mere risk of loss and that all the conditions establishing this risk were met upon termination of the Robel lease. On or about May 20, 1985 appellant drew on the letter of credit in the amount of $16,344.

On September 27, 1985, respondent's attorneys mailed a "courtesy copy" of a summons and complaint to appellant. Respondent's attorneys indicated they would be serving the summons and complaint upon appellant the next day. Appellant's assistant counsel gave a copy of the complaint to appellant's general counsel for review. The general counsel then contacted a private attorney to handle the matter. After service of the summons and complaint, appellant's general counsel gave a copy to the assistant counsel and contacted the private attorney.

There is some question as to exactly what happened next. Apparently the general counsel thought the assistant counsel would forward the complaint to the outside attorney. The assistant counsel thought the general counsel would take care of the

matter. As a result of the misunderstanding between these three attorneys, appellant failed to respond to the summons and complaint.

On November 6, 1985 respondent appeared before the trial court and moved for an order granting a default judgment. Appellant failed to appear. Respondent offered testimony to prove up respondent's claim for the $16,344 draw on the letter of credit. The following day the trial court issued Findings of Fact, Conclusions of Law, and an Order for Default Judgment.

By January of 1986 appellant discovered its error. On the 22nd day of that month appellant moved to vacate the default judgment. The trial court heard oral argument on the matter and on March 11, 1986 issued an Order and Memorandum denying the Motion to vacate. The court found that appellant did not possess a reasonable defense on the merits. Specifically, the court found that the indemnity provision of the contract indemnified only in the case of actual loss. Since appellant claimed no such loss the court found that appellant did not possess a reasonable defense on the merits. Additionally, the court indicated that the fact that there were three attorneys that had failed to answer the complaint negated any claim of excuse. However, the court found that appellant had acted with due diligence after notice of entry of judgment and that no substantial prejudice would result to respondent if the matter were to proceed to contest on the merits. Additionally, the trial court ordered the award of attorney's fees to respondent pursuant to the previous agreement of the parties. On April 11, 1986, appellant appealed the March 11 order denying appellant's motion to vacate the default judgment.

### ISSUE

Did the trial court properly deny appellant's motion to vacate default judgment?

### ANALYSIS

A default judgment may be entered against a party who fails to plead or otherwise defend within the time allowed by law. Minn.R.Civ.P. 55.01. Yet, Rule 60.02 provides that a court may relieve a party from a final judgment for "[m]istake, inadvertence, surprise, or excusable neglect" as well as "any other reason justifying relief from the operation of the judgment." Minn.R.Civ.P. 60.02. Pursuant to Rule 60.02 Minnesota courts will relieve a defendant from a default judgment when the defendant:

(a) is possessed of a reasonable defense on the merits,

(b) has a reasonable excuse for its failure or neglect to act,

(c) has acted with due diligence after notice of the entry of judgment, and

(d) shows that no substantial prejudice will result to the other party. *Finden v. Klaas,* 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964). In evaluating the existence and strength of these factors the relative weakness of one factor should be balanced against the strong showing on the other three. *Guillaume & Assoc., Inc. v. Don-John Co.,* 371 N.W.2d 15, 19 (Minn.Ct.App. 1985). Still "[t]he right to be relieved of a default judgment is not absolute." *Howard v. Frondell,* 387 N.W.2d 205, 207 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. July 31, 1986). Further, whether the judgment should be reopened is a matter largely within the trial court's discretion and will not be reversed on appeal absent a clear abuse of discretion. *Id.* at 207–08.

Appellant argues that the trial court abused its discretion when it held that appellant did not have a reasonable defense on the merits in this action. Specifically, the trial court found that the indemnity provision of the contract providing for an unrestricted letter of credit was intended to indemnify for only actual loss that appellant would have sustained had it been forced to sell leased vehicles at below book value. Since appellant did not argue that it sustained such a loss, the trial court found that appellant did not have a reasonable defense to respondent's challenge of appel-

lant's draw on the letter of credit. Appellant maintains that the intent of the parties was to indemnify for merely risk of loss. Appellant further maintains that it had sustained such a risk of loss at the time of its draw on the letter of credit. Appellant argues that the conditions in paragraph 19, establishing the existence of such a risk of loss, were present. Specifically, that a lease was terminated, the book value was greater than the Schedule A value, and the lessee had the option or obligation to purchase the rented vehicles. It is this interpretation of the indemnity provision of the contract that is the basis for appellant's claim that it possessed a reasonable defense on the merits.

We find that it was not error for the trial court to have held that the indemnity provision of the contract provided for indemnification for actual damage only. The interplay between paragraphs 4A and 19 as well as the evidence explaining their meaning offered by the parties provided the court with sufficient basis for holding as it did. Additionally, the nature of the problem which was the basis for the indemnity provision, the loss appellant might suffer if forced to sell several vehicles at below book value, adds support to the trial court's conclusion that the provision applied only to actual damages. The court has properly fit a loosely drawn document into the schema of existing law. *See Christy v. Menasha Corp.*, 297 Minn. 334, 339, 211 N.W.2d 773, 776 (1973). (Generally, in contracts of indemnity for loss or damage, actual loss must be incurred before indemnity is required). Since the indemnity provision applied only to a case of actual loss appellant was left without a reasonable defense on the merits because appellant has not claimed to have suffered the actual loss contemplated by the contract.

Because the trial court correctly found that appellant did not possess a reasonable defense on the merits, we also find that appellant's motion to vacate default judgment was properly denied. Appellant had established only two of the four necessary factors for vacation of a default judgment: that appellant acted with due diligence after notice of entry of judgment and that no substantial prejudice will result to respondent if the matter is tried on the merits. Yet, even assuming a showing of reasonable excuse for appellant's failure to act on the third factor, the lack of a reasonable defense on the merits has not been compensated for by evidence on the other three. Certainly the necessary "strong showing" has not been made on all three of the remaining factors. *See Guillaume*, 371 N.W.2d at 19. More importantly, appellant's lack of a reasonable defense on the merits to respondent's claim itself leaves little logical reason to compel vacation of default judgment.

Appellant's case is distinguishable from the cases cited in which a weak showing on one of the four factors was balanced by strong showings on the other three. *See Hill v. Tischer*, 385 N.W.2d 329 (Minn.Ct. App.1986); *Spicer v. Carefree Vacations, Inc.*, 379 N.W.2d 728 (Minn.Ct.App.1986). Contrary to the case here, in both *Hill* and *Spicer* the defendant had a reasonable defense on the merits, the deficient factor being the lack of a reasonable excuse for failure to act. *Hill*, 385 N.W.2d at 332; *Spicer*, 379 N.W.2d 730–31. Thus, neither case compels us to reverse the trial court's finding in the present case.

## DECISION

The trial court properly denied appellant's motion to vacate default judgment.

Affirmed.