**Edwin J. OSTER, et al., Respondents,**

v.

**MEDTRONIC, INC., Construction Analysis and Management, Inc., Respondents.**

**MEDTRONIC, INC., third-party plaintiff, Respondent,**

v.

**ALBERT KASTNER & SONS, INC., third-party defendant, Appellant.**

**No. C7–87–2366.**

Court of Appeals of Minnesota.

Aug. 23, 1988.

John Borman, St. Paul, for Edwin J. Oster.

John H. Faricy, Jr., Minneapolis, for Marlene J. Oster.

Michael R. Peterson, Minneapolis, for Medtronic, Inc.

John F. Angell, Minneapolis, for Const. Analysis and Management, Inc.

Leon R. Erstad, Minneapolis, for Albert Kastner & Sons, Inc.

Heard, considered and decided by NORTON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

NORTON, Judge.

This appeal is from a trial court's ruling requiring a contractor to indemnify a construction manager for the construction manager's own negligence. We affirm.

## FACTS

In 1979, Medtronic, Inc. (Medtronic) contracted with Construction Analysis and Management, Inc. (CAM) to have CAM act as the construction manager of a project aimed at building an addition onto one of Medtronic's buildings. CAM's duties included preparing contracts between Medtronic and other trade contractors and supervising the overall operation of the construction project. Kastner & Sons, Inc. (Kastner), the trade contractor which performed the plastering work on the project, signed a contract prepared by CAM, with Medtronic in January, 1980. Kastner's contract obligated it to provide for the safety of its employees working on the project. Under OSHA regulations, each trade contractor, including Kastner, was required to provide its own employees with a place to change clothes and eat lunch. Kastner never provided its employees with a shelter at the construction site, however. Instead, Kastner's employees, including the plaintiff Edwin Oster, regularly took their breaks and changed clothes in a construction shelter built and maintained by CAM on the

work site. This was done with the knowledge and permission of CAM.

Oster was employed by Kastner as a plasterer on the construction project. On June 2, 1980, a CAM employee let Oster into the shelter at about 7:00 a.m. Oster then went to his regular spot in the shelter to change into his work clothes. Unbeknownst to Oster someone had removed one of the buckets under the make-shift bench upon which he normally sat when changing. When he sat down, the bench collapsed, and Oster fell to the floor. Oster sustained back injuries and underwent back surgery as a result of his fall.

Oster sued CAM and Medtronic for his injuries. Kastner was brought into the suit as a third-party defendant. Oster's damage claim was settled prior to trial, but the claims between the defendants and Kastner were not. Liability issues were tried to a jury. The jury apportioned negligence as follows:

| | |
|---|---|
| Plaintiff Oster | 20% |
| Defendant CAM | 45% |
| Defendant Medtronic | 0% |
| Third-party Defendant Kastner | 35% |

Kastner does not contest the jury's apportionment of negligence. Instead, Kastner appeals the trial court's ruling that Kastner's contract with Medtronic obligates Kastner to indemnify CAM for the entire judgment, including the amounts attributable to CAM's own negligence.

## ISSUES

I. Does Kastner's contract expressly provide that Kastner will indemnify CAM for CAM's own negligence?

II. Did Oster's injuries arise out of "the performance of the Work" contemplated by the contract?

## ANALYSIS

### I.

Paragraph 4.18 of the contract between Kastner and Medtronic provides:

The contractor shall indemnify and hold harmless the owner, the architect, and the construction manager and their agents and employees from and against all claims, damages, losses, and expenses, including attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, *regardless of whether or not it is caused in part by a party indemnified hereunder.*

(emphasis added). The trial court concluded that the language "regardless of whether or not it is caused in part by a party indemnified hereunder" contained in paragraph 4.18 requires Kastner to indemnify CAM, even for the percentage of Oster's injuries attributable to CAM's own negligence.

Agreements seeking to indemnify a party for losses resulting from that party's own negligent acts are not favored in the law and are not construed in favor of indemnification, unless such intention is expressed in clear and unequivocal terms. *Johnson v. McGough Construction Co., Inc.*, 294 N.W.2d 286, 288 (Minn.1980). However, a specific reference to "negligence" is not required if the provision as a whole states the indemnitor's intent to be liable for the indemnitee's negligence. *Id.*

In *Johnson,* the supreme court interpreted language, similar to that found in paragraph 4.18, contained in a subcontractor's contract with its general contractor. The provision stated in part that the subcontractor would "assume entire responsibility and liability for all damages" and would "indemnify and save harmless the Contractor * * * from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be, or may be claimed to be, liable." *Id.* at 287. The supreme court found this language sufficiently explicit to

hold the subcontractor liable for the contractor's negligence in an action for indemnification. *Id.* at 288. We believe the language in paragraph 4.18 is at least as specific as that found in the *Johnson* contract, since it unequivocally expresses Kastner's intent to indemnify CAM, even for amounts attributable to CAM's own negligence.

Kastner relies on *Braegelmann v. Horizon Development Co.*, 371 N.W.2d 644 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985), and *Mattila v. Minnesota Power & Light Co.*, 363 N.W.2d 842 (Minn.Ct.App.1985) *pet. for rev. granted* (Minn. May 24, 1985), *case dismissed* (Minn. Oct. 9, 1985), two cases in which this court found indemnification clauses insufficiently explicit to allow indemnification for another's negligence. Kastner's reliance on these decisions is misplaced, however, because the language used in the indemnity clauses therein differ from that used in the present contract.

The indemnity clause at issue in *Braegelmann* required a subcontractor to indemnify a contractor for damages "to the extent [the damages were] caused in whole or in part by the negligent act or omission of the *subcontractor* * * *." *Braegelmann*, 371 N.W.2d at 645 (emphasis added). This court found that language sufficient proof that the subcontractor had not explicitly agreed to indemnify the contractor for the contractor's own negligence. *Id.* at 646. Unlike the subcontractor in *Braegelmann*, however, Kastner's indemnity obligations were not limited to those damages brought on by its own acts or omissions. To the contrary, paragraph 4.18 requires Kastner to indemnify CAM against all claims whether or not they are caused in part by either Kastner or CAM.

In *Mattila*, this court construed an indemnity clause as only requiring a subcontractor to defend, and not indemnify, a contractor. This construction turned on the precise punctuation of the clause used therein. *Mattila*, 363 N.W.2d at 845. Paragraph 4.18 does not lend itself to a similar interpretation.

We also do not agree with Kastner's argument that its indemnification obligations flow exclusively from paragraph 10.2.2 in the contract, requiring Kastner to abide by all safety regulations in performance of their contractual duties. Paragraph 10.2.2 provides:

> The contractor shall give all notices and comply with all applicable laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury, or loss. The contractor agrees to hold harmless and indemnify the owner, construction manager and architect, and their agents and employees against all claims, fines, liabilities, losses, damages, and expenses, (including attorney fees) arising out of or resulting from the contractor's failure to comply with said legal requirements, to perform the work free from faults and defects in conformance with the contract documents, and to take any other prudent or reasonable actions.

Unlike paragraph 4.18, paragraph 10.2.2 does not express any clear intent to allow CAM indemnification from Kastner for CAM's own negligence. However, to find that Kastner's indemnity obligations are controlled exclusively by paragraph 10.2.2 would render nugatory the purpose and intent of paragraph 4.18. This we cannot do. Where there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony between them and to reconcile them if possible. *Lawton v. Joesting*, 96 Minn. 163, 167, 104 N.W. 830, 832 (1905). Each and every provision of a contract must be given effect if that can consistently and reasonably be done, and all clauses and provisions should be construed to harmonize with one another. *Id.*

Paragraph 10.2.2 and paragraph 4.18, as well as the circumstances triggering them, are not mutually exclusive. Even if paragraph 10.2.2 is applicable in this case, it does not affect Kastner's duty to indemnify CAM for CAM's own negligence as expressly provided in paragraph 4.18. The trial court did not err in holding that Kastner had a duty to indemnify CAM, pursuant to the language of the contract.

## II.

Kastner next argues that Oster's injuries were too far removed from his actual work as plasterer on the construction site to trigger Kastner's indemnification obligations under the contract. Paragraph 4.18 provides that Kastner is liable to indemnify CAM for claims "arising out of or resulting from the performance of the Work." "The Work" is defined in the contract to include "all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated or to be incorporated in such construction."

In order to give rise to an obligation to indemnify under the language in paragraph 4.18, there must be a temporal and geographic or a causal relationship between the work contracted for by Kastner and Oster's injuries. *Anstine v. Lake Darling Ranch*, 305 Minn. 243, 233 N.W.2d 723 (1975). The trial court found all these requirements met in this case. This assessment of the facts by the trial court will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

Kastner relies heavily on *Fossum v. Kraus–Anderson Construction Co.*, 372 N.W.2d 415 (Minn.Ct.App.1985) to show that this relationship requirement is not met on the facts of this case. In *Fossum*, this court interpreted an indemnification clause very similar to the one at issue here. The clause stated in relevant part that:

> the subcontractor agrees to assume entire responsibility * * * for all damages * * * to all persons * * * arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this subcontract * * *.

*Id.* at 417.

The injured worker in *Fossum* was employed as a foreman by the subcontractor. He was charged with supervising a construction project in downtown Minneapolis. At the end of one work day, the foreman left the construction site and walked onto the street, where he stood near a fence erected to control access to the work site. The foreman was then injured when a car that had stopped for him was rear-ended by another car, pushing the first car into the foreman. *Id.* at 416–17.

In applying the *Anstine* criteria, this court found that there was neither a temporal nor geographic relationship between performance of the subcontractor's work and the foreman's injury, since the foreman "had completed his work and left the job site to go home." *Id.* at 418. This court also found no causal connection between performance of the work and the foreman's injuries, because the foreman had finished his employer's work for the day. *Id.* We then concluded that because the foreman's injuries exceeded the scope of the indemnity clause, his employer was not obligated to indemnify the general contractor. *Id.*

■ *Fossum* is factually dissimilar to the case at hand and does not control Kastner's indemnification obligations. Unlike the foreman in *Fossum*, Oster was injured on the construction site. In fact, the shelter in which Oster was injured was located only 500 to 1000 feet from where construction work was being performed. This sole fact distinguishes this case from *Fossum*. The supreme court "has only found the connection between the injury and the 'execution of the work' *present* where an employee of the subcontractor has sustained injuries while on the job site." *Id.* at 417–18 (emphasis in original).

We also find that Oster's injuries were temporally related to his work performance. While Oster's injuries were incurred before he actually began his plastering duties on the construction site, the accident occurred in a shelter which Oster entered for the purpose of changing into his work clothes. In this sense, Oster's injuries were sustained while preparing for work, just minutes before Oster began his plastering work.

Finally, because Oster entered the shelter to prepare for his work duties contemplated by the contract, a but-for causal connection exists between his injuries and the work. *See Johnson v. McGough Construction Co.*, 294 N.W.2d 286 (Minn.1980) (subcontractor's work performance but-for

cause of employee's injuries sustained near trailer kept on work site by general contractor). Because there is a temporal, geographical, and causal nexus between Kastner's work and Oster's injuries, we conclude that Oster's injuries arose out of the work contemplated by the contract within the meaning of paragraph 4.18.

## DECISION

Kastner is required to indemnify CAM even for those amounts attributable to CAM's own negligence, because paragraph 4.18 is sufficiently explicit to so require, and because Oster's injuries arose out of the work contemplated by the contract.

Affirmed.