Thomas R. HOLMES, Respondent,

v.

WATSON–FORSBERG COMPANY, Defendant and Third–Party Plaintiff, Respondent,

v.

PRO–TECH ROOF SYSTEMS, INC., Third–Party Defendant, Appellant,

and

Employee Benefit Administration, Intervenor, Respondent.

No. C9–90–2637.

Court of Appeals of Minnesota.

June 11, 1991.

Review Granted Aug. 2, 1991.

Tyrone P. Bujold, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent, Thomas R. Holmes.

Mark A. Gwin, Michael D. Barrett, Cousineau, McGuire & Anderson, Minneapolis, for respondent Watson–Forsberg Co.

Wayne D. Tritbough, Dale O. Thornsjo, Chadwick, Johnson & Condon, P.A., Minneapolis, for appellant Pro–Tech Roof Systems, Inc.

John H. Faricy, Jr., M. Chapin Hall, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for respondent Employee Benefit Adm'n, Intervenor.

Considered and decided by AMUNDSON, P.J., and HUSPENI and MULALLY*, JJ.

## OPINION

AMUNDSON, Judge.

Plaintiff Thomas Holmes commenced an action against respondent Watson–Forsberg Company, alleging negligent inspection of a construction site, failure to warn of unsafe conditions, and failure to remove snow and ice from the roof on which Holmes was working. Watson–Forsberg brought a third-party action against appellant Pro–Tech Roof Systems, Inc. seeking contribution and indemnification for negligence. Watson–Forsberg moved for summary judgment on its right to contractual indemnification from Pro–Tech. This motion was granted. Holmes' claim against Watson–Forsberg was subsequently settled. The trial court amended its order for summary judgment to include the language of Minn.R.Civ.P. 54.02 to allow an appeal from a partial judgment. Pro–Tech appeals, alleging the trial court erred in determining it must indemnify Watson–Forsberg.

## FACTS

Holmes was injured on November 16, 1986 when he fell from the roof of a townhome under construction. At the time of the accident, Holmes was an employee of Pro–Tech. Watson–Forsberg was the general contractor on the job; Pro–Tech was the roofing subcontractor.

The subcontract between Pro–Tech and Watson–Forsberg provided:

[Pro–Tech agrees] to obtain, maintain and pay for such insurance as may be required by the General Contract, the rider attached hereto, or by law * * *.

[Pro–Tech] agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, * * *, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract * * * and [Pro–Tech] to the fullest extent permitted by law, agrees to indemnify and save harmless [Watson–Forsberg] * * * from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable * * * and [Pro–Tech] further agrees to obtain, maintain and pay for such general liability insurance coverage and endorsements as will insure the provisions of this paragraph.

As required by the subcontract, Pro–Tech obtained the appropriate insurance, including a policy with contractual indemnification coverage. After Holmes sued Watson–Forsberg, Watson–Forsberg sought indemnification from Pro–Tech pursuant to the subcontract. Pro–Tech asserted the indemnification agreement was unenforceable pursuant to Minn.Stat. § 337.02 (1988). The trial court granted Watson–Forsberg's summary judgment motion, concluding the indemnification provision was a valid agreement to insure pursuant to Minn.Stat. § 337.05, subd. 1 (1988) and Watson–Forsberg was entitled to indemnification from

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

Pro–Tech to the extent of available insurance coverage.

Holmes' claim proceeded through mediation. The parties settled the claim, and the trial court amended its order for summary judgment to allow an appeal. On appeal, Pro–Tech contends the trial court erred in determining the indemnification agreement is enforceable.

## ISSUE

Did the trial court err in finding the indemnification agreement enforceable to the extent of available insurance?

## ANALYSIS

### 1. STANDARD OF REVIEW

 The trial court in the present case granted summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Statutory interpretation presents an issue of law which this court reviews de novo on appeal. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). Similarly, interpretation of a contract is a question of law which the trial court may properly decide on a motion for summary judgment and which this court will review de novo on appeal. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978).

### 2. CHAPTER 337

In 1983 the Minnesota Legislature placed severe restrictions on indemnification agreements in construction contracts. Minn.Stat. §§ 337.01–.06 (1988). Chapter 337 is the most restrictive approach taken by the 31 states that have limited the permissible scope of indemnity agreements. Kleinberger, *No Risk Allocation Need Apply: The Twisted Minnesota Law of In-*

*demnification*, 13 Wm. Mitchell L.Rev. 775, 811–812 (1987).

Minnesota law provides:

An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegatees.

Minn.Stat. § 337.02 (1988).

Chapter 337 arose out of the legislature's perception that prohibiting indemnification agreements under which the indemnitee could be indemnified for the results of the indemnitee's own negligence would lead to greater safety in the construction workplace. One legislator stated:

[T]he concept of making someone else liable for my negligence just runs counter to the way I feel. * * * [I]f you're wrong, you ought to pay for your wrong. * * * I just think it's time we put the responsibility on those people who cause [accidents], because if you're responsible, I think it's an incentive to be more careful.

Hearing on H.F. No. 855 Before the Law Reform Subcommittee (April 6, 1983) (comments of Representative Dempsey).

Similarly, the bill's Senate sponsor stated:

The rationale [behind Chapter 337] is that it really doesn't do us any good to have tort liability if people can actually avoid their liability. * * * [T]he whole notion behind our tort law is that people pay for the damages they cause and * * * that keeps them from * * * acting in a negligent manner. It encourages responsible behavior, and that's the general thrust of the bill.

Hearing on S.F. No. 1142 Before the Civil Law Subcommittee (April 15, 1983) (comments of Senator Peterson).

At a subcommittee meeting concerning what became Chapter 337, the Minnesota Architects Association proposed "a reason-

able accommodation." The architects association's proposal permitted the parties to agree that one of the parties would be responsible for providing a single insurance policy to cover the entire project. Hearing on S.F. No. 1142 Before the Civil Law Subcommittee (April 15, 1983). This proposal eventually became Minn.Stat. § 337.05 (1988). Under this section an agreement in a construction contract whereby one party purchases insurance for the benefit of other parties is valid. *See id.,* subd. 1.

### 3. APPLICATION OF CHAPTER 337

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

Minn.Stat. § 645.16 (1990). In determining the legislature's intention in enacting chapter 337, this court may presume that the legislature did not intend a result that is absurd, impossible of execution, or unreasonable. Minn.Stat. § 645.17 (1990). The entire statute is intended to be effective and certain. *Id.*

The subcontract at issue is a standard form contract provided by the Associated General Contractors (AGC) of Minnesota. It is the 1985 Edition, yet it does not reflect the changes in the law made in 1983. This is surprising in light of the fact that Chapter 337 was first proposed by AGC and AGC strongly supported the statute.

The language of the AGC subcontract has been before the Minnesota Supreme Court several times. *See Johnson v. McGough Constr. Co., Inc.,* 294 N.W.2d 286 (Minn.1980); *Anstine v. Lake Darling Ranch,* 305 Minn. 243, 233 N.W.2d 723 (1975); *Christy v. Menasha Corp.,* 297 Minn. 334, 211 N.W.2d 773 (1973). In each case, the court stated that the clause at issue was an indemnification agreement. *See Johnson,* 294 N.W.2d at 288; *Anstine,* 305 Minn. at 249, 233 N.W.2d at 727; *Christy,* 297 Minn. at 337, 211 N.W.2d at 775.

The clause at issue in the present case is clearly an indemnification agreement. Such agreements are unenforceable. Minn.Stat. § 337.02. The trial court, however, found, based on the last sentence of the provision, that it was an agreement to insure, which is enforceable pursuant to Minn.Stat. § 337.05. The insurance provision of the clause obligates Pro–Tech to:

[O]btain, maintain and pay for such general liability insurance coverage as will insure the provisions of this paragraph.

The provisions of the paragraph, however, constitute an unenforceable indemnification agreement. Because the indemnification agreement is not enforceable, there is nothing to insure. The trial court erred in finding Watson–Forsberg entitled to indemnification to the extent of available insurance.

The attempt in the present case to turn old contract language into something it is not (i.e. an agreement to insure) is contrary to the clearly expressed intent of the legislature. Attempts to shift the burden of paying for one's own negligence, in the context of construction contracts, cannot be disguised as agreements to insure by using indemnification language. Permitting Watson–Forsberg to enforce the indemnification agreement would frustrate the legislative intent to make each link in the chain of construction responsible for the consequences of its own negligence. The legislature has determined that one cannot shift responsibility for safety and avoid the consequences, and the courts of this state will not hesitate to strike down agreements which subvert the legislative intent.

### DECISION

The indemnification agreement is unenforceable. Requiring a subcontractor to insure its obligations under an unenforceable agreement does not convert the agreement into an agreement to provide insurance.

Reversed.