Robert SEIFERT, Plaintiff,

and

The Home Insurance Company, Intervenor,

v.

REGENTS OF the UNIVERSITY OF MINNESOTA, et al., Defendants.

REGENTS OF the UNIVERSITY OF MINNESOTA, Third–Party Plaintiff, Respondent,

v.

AXEL NEWMAN HEATING AND PLUMBING CO., a/k/a Newmech Company, Inc., Third–Party Defendant, Appellant.

Nos. C7–93–13, C6–93–696.

Court of Appeals of Minnesota.

Aug. 24, 1993.

Review Denied Oct. 28, 1993.

Eric Magnuson, David F. Fitzgerald, Rider, Bennett, Egan & Arundel, Minneapolis, for third-party plaintiff, respondent.

James F. Mewborn, Don C. Day, Minneapolis, for third-party defendant, appellant.

Considered and decided by HUSPENI, P.J., and PETERSON and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.*

Appellant NewMech Company, Inc. challenges summary judgment that awarded respondent Regents of the University of Minnesota attorney fees and costs under the indemnity provision in NewMech's construction contract with the Regents.

## FACTS

In October 1984, respondent Regents of the University of Minnesota (Regents) contracted with appellant NewMech Company, Inc. (NewMech) to remodel Smith Hall on the University of Minnesota campus. In April 1985, Robert Seifert, an employee of NewMech, was injured at the job site. Two years later, Seifert sued several parties, including NewMech and the Regents, alleging negligence.

In January 1989, the Regents tendered the defense of Seifert's claim to NewMech, but NewMech did not accept the tender. In August 1989, NewMech settled with Seifert on a *Pierringer* release for $2,500. The Regents commenced a third-party action against NewMech for indemnification based on a provision in the 1984 construction contract. In September 1989, after learning they may be an additional insured on NewMech's Home Insurance Company policy, the Regents tendered the defense to Home Insurance Company. Later, the Regents discovered they were not an additional insured on the Home policy. On January 7, 1990, after discovering that NewMech had purchased a policy from St. Paul Companies to cover injuries arising from the Smith Hall project, the Regents tendered defense of Seifert's claim to St. Paul Companies, which accepted the Regents' tender of defense.

In October 1990, on behalf of the Regents, St. Paul Companies settled with Seifert for $2,500. St. Paul Companies also paid the Regents $5,693.76 for expenses and attorney fees incurred between the date the Regents tendered defense to St. Paul Companies (January 7, 1990) and the settlement date.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

St. Paul Companies refused to reimburse the Regents for defense costs before the date of tender.

In April 1992, the Regents and NewMech brought cross-motions for summary judgment. The Regents argued the indemnity provision in the 1984 construction contract is enforceable against NewMech. NewMech in turn argued Minn.Stat. § 337.02 (1984) invalidated the parties' indemnification agreement and NewMech's purchase of the St. Paul Companies' policy satisfied its obligation under the contract.

The district court granted the Regents summary judgment and denied NewMech's motion. Having concluded NewMech was obliged to indemnify the Regents for attorney fees and costs in defending Seifert's claim and for enforcing their right of indemnification against NewMech, the court conducted a trial to determine the amount of attorney fees and costs. The trial court awarded the Regents $100,589.44 in attorney fees and costs. The trial court entered judgment and awarded $9,436.90 in prejudgment interest. This appeal followed.

### ISSUES

1. Does Minn.Stat. § 337.02 (1984) invalidate the indemnity provision in the parties' construction contract?

2. Are the Regents entitled to attorney fees and costs incurred in establishing their right to indemnification?

3. Are the Regents entitled to attorney fees and costs incurred before their tender of defense to NewMech?

### ANALYSIS

■ On appeal from a summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The trial court held that the indemnity provision in the Regents' and NewMech's construction contract is enforceable under Minn. Stat. § 337.02 (1984). Construction of a statute is a question of law and subject to de novo review. *Doe v. State Bd. of Medical Examiners*, 435 N.W.2d 45, 48 (Minn.1989).

### I.

■ The parties' October 1984 indemnity agreement provides:

> To the fullest extent permitted by law, [NewMech] shall indemnify and hold harmless the [Regents] ... and their agents and employees from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance, or lack of performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury ... and, (2) is caused in whole or in part by any negligent act or omission of [NewMech], any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

NewMech contends the indemnity provision is invalidated by Minn.Stat. § 337.02, which provides:

> An *indemnification agreement* contained in, or executed in connection with, a building and construction contract is *unenforceable except to the extent* that the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees or delegatees.

*Id.* (emphasis added).

The trial court concluded the indemnity agreement was enforceable. We agree. NewMech selectively emphasizes the "unenforceable" language and ignores the "except to the extent that" language. The statute's plain language provides that indemnification agreements in construction contracts are unenforceable "except to the extent" they provide indemnification for the promisor's own negligence. *See* Minn.Stat. § 645.16 (1992) ("law shall be construed, if possible, to give effect to all its provisions"). Conversely, section 337.02 prohibits indemnification of promisees, like the Regents, for their own negligence.

The trial court concluded no evidence was submitted that supported a finding of negligence on the Regents' part. We agree. The record reflects that (1) pursuant to the con-

struction contract, NewMech assumed all of the Regents' duties to keep the property safe; (2) NewMech's safety manager testified by deposition that NewMech was not relying on any other entity—subcontractors, engineers, or the Regents—to provide safety for NewMech employees; (3) the safety manager testified the project foreman was responsible for the NewMech crew's safety; and (4) testimony indicated Seifert's accident was caused by his failure to take safety precautions and NewMech's failure to provide safe conditions. Under these circumstances, to permit NewMech to invalidate the indemnity clause by merely claiming the Regents were negligent, without providing evidence creating a material fact issue, would permit New-Mech to avoid its responsibility to pay for damages that it caused. *See Holmes v. Watson–Forsberg Co.,* 471 N.W.2d 109, 111 (Minn.App.1991) (citing to legislative history indicating section 337.02's thrust is for people to pay for damages they cause), *rev'd on other grounds,* 488 N.W.2d 473 (Minn.1992). Consequently, we hold that section 337.02 does not invalidate the parties' indemnity agreement.

■ We note that the 1984 construction contract also required NewMech to obtain insurance to cover its indemnification obligation to the Regents. The supreme court has held that when an indemnitor's obligations are covered by insurance then section 337.02's invalidation language does not apply. *Holmes,* 488 N.W.2d at 475; Minn.Stat. § 337.05 (1984) (sections 337.01 to 337.05 do not affect validity of agreements where promisor provides insurance coverage for others' benefit). In this case, NewMech purchased insurance to cover "any claim arising out of the insured hold harmless agreement." The supreme court's holding in *Holmes* therefore provides an alternative ground to uphold the validity and enforceability of the parties' indemnification agreement.

## II.

■ NewMech argues the Regents are not entitled to attorney fees and costs incurred in establishing their right to indemnification. Construction of language in a contract is a question of law for the court. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978).

According to the 1984 contract, NewMech indemnified the Regents "to the fullest extent permitted by law" against all "claims, damages, losses and expenses including *attorney fees* " arising from the contractor, the subcontractors, or their employees. (Emphasis added.) In the insurance context, the supreme court has held that when an insurer breaches its duty to indemnify, the insured is entitled to attorney fees incurred prosecuting its right to indemnification. *Economy Fire & Casualty Co. v. Iverson,* 445 N.W.2d 824, 827 (Minn.1989); *Brown v. State Auto. & Casualty Underwriters,* 293 N.W.2d 822, 825 (Minn.1980).

In arguing for reversal, however, New-Mech distinguishes between indemnity provisions in insurance contracts and indemnity provisions like the one in this case. The reasoning underlying the distinction made by NewMech is compelling:

> Indemnity obligations * * * require the indemnitor to hold the indemnitee harmless from costs in connection with a particular class of claims. Legal fees and expenses incurred in defending an indemnified claim are one such cost and thus fall squarely within the obligation to indemnify. Consequently, attorney's fees incurred in defending against liability claims are included as part of the indemnity obligation implied by law and reimbursement of such fees is presumed to have been the intent of the draftsmen unless the agreement explicitly states otherwise. * * * Such reasoning does not apply to fees and expenses incurred in establishing the existence of an obligation to indemnify, since such expenses are not by their nature a part of the claims indemnified against. Rather, they are costs incurred in suing for a breach of contract, to-wit, the failure to indemnify.

*Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306, 316 (2d Cir.1985) (citations omitted). Consequently, we hold that the Regents as indemnitees are not entitled to recover fees and expenses from NewMech incurred trying to establish their right of indemnity against NewMech.

The Regents may be entitled to attorney fees and costs for prosecuting their right to indemnification if the agreement with New-Mech explicitly states so. *Id.; see Besemer*

*v. Board of County Comm'rs,* 357 N.W.2d 365, 368 (Minn.App.1984) (attorney fees not awarded in absence of specific statutory or contractual authorization). In this case, however, NewMech only indemnified the Regents for attorney fees "arising out of or resulting from the performance, or lack of performance of the work." This language refers to the Regents' legal expenses incurred in defending Seifert's negligence claim; it does not on its face entitle the Regents to attorney fees and costs incurred in prosecuting its right to indemnification from NewMech. Accordingly, the trial court erred by according the Regents attorney fees and costs incurred trying to enforce their right to indemnification.

### III.

NewMech argues the district court erred by awarding attorney fees and costs incurred by the Regents before their tender of defense to NewMech. We agree. A tender of defense is a condition precedent to the creation of an obligation to indemnify. *See Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 353 (Minn.1981); *Logefeil v. Logefeil,* 367 N.W.2d 114, 116 n. 1 (Minn.App.1985) (tender of defense is condition precedent to recovering attorney fees).

Rider, Bennett, Egan & Arundel commenced representation of the Regents in February 1988, but the Regents did not tender their defense to NewMech until January 18, 1989. Because the Regents defended Seifert's claim for nearly a year before tendering defense of the case to NewMech, the $6,884.23 in fees incurred during that year is unrecoverable as a matter of law.

The Regents' reliance on *Illinois Cent. R.R. v. Blaha,* 3 Wis.2d 638, 89 N.W.2d 197 (1958) is misplaced. In *Blaha* the defendant landowner knew of the plaintiff's reliance on the indemnity agreement. *Id.,* 89 N.W.2d at 198. In this case, the facts are not clear when NewMech knew, if it knew at all before January 1989, that the Regents planned to enforce the indemnity provision in the 1984 contract. Equally important, the Regents have failed to explain why a twenty-month hiatus occurred between commencement of Seifert's lawsuit on April 21, 1987, and the Regents' tender of defense to NewMech on January 18, 1989.

To require NewMech to indemnify the Regents before a formal tender of defense would encourage indemnitees to defend claims on their own and then, after fees have been incurred, notify the indemnitor and hold it liable for earlier costs. In this case, the trial court erred by awarding the Regents attorney fees incurred before the Regents tendered defense of Seifert's claim to NewMech.

On remand the trial court should calculate the amount of attorney fees and costs incurred by the Regents after January 18, 1989, which did not arise from the Regents prosecuting their right to indemnity.

### DECISION

The parties' indemnity provision is enforceable. The trial court erred by awarding the Regents attorney fees and costs incurred before they tendered defense of Seifert's claim to NewMech and in prosecuting their right to indemnification from NewMech.

**Affirmed in part, reversed in part and remanded.**