# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1601

———————

Video Update, Inc., a Minnesota    *
corporation,    *
   *
        Appellant,    *
   *   Appeal from the United States
     v.    *   District Court for the
   *   District of Minnesota
Videoland, Inc., an Indiana    *
corporation; Mark Spilker,    *
individually,    *
   *
        Appellees.    *

———————

Submitted: February 10, 1999

Filed: July 8, 1999

———————

Before McMILLIAN, JOHN R. GIBSON and MURPHY, Circuit Judges.

———————

McMILLIAN, Circuit Judge.

Video Update, Inc. (Video Update) appeals from a final order entered in the United States District Court[1] for the District of Minnesota, granting summary

———————

[1]The Honorable Paul Magnuson, Chief Judge, United States District Court for the District of Minnesota.

judgment in favor of Videoland, Inc. (Videoland), and Videoland's owner, Mark Spilker. Video Update, Inc., v. Videoland, Inc., No. 3-96-735 (D. Minn. Jan. 26, 1998). For reversal, Video Update argues that the district court erred in (1) interpreting the purchase agreement between Video Update and Videoland, (2) awarding attorney's fees to Videoland and Spilker, and (3) awarding pre-judgment interest to Videoland and Spilker. For the reasons stated below, we affirm.

## Jurisdiction

Jurisdiction in the district court was proper based upon 28 U.S.C. § 1332. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following is a summary of the undisputed facts set forth in the district court's order. Id. In 1980 Mark Spilker founded Videoland, a video rental business which owned and operated various stores in Lafayette, Indiana. Video Update and Videoland entered into negotiations for the sale of Videoland to Video Update which culminated in a signed purchase agreement in November 1995. Under the purchase agreement, Video Update agreed to pay Spilker approximately $4 million-- $2 million in cash and approximately $2 million in unregistered Video Update stock (239,163 shares). The purchase agreement provided that, if Spilker sold the stock between March 14 and September 14, 1996, Video Update would guarantee a price of at least $12 per share. If the stock sold for less than $12, Video Update agreed to pay the difference or the "deficiency amount," in cash or additional stock, as set forth in Section 1.3(a)(ii) (the "deficiency payment provision") of the purchase agreement.[2] In addition, Section

_____

[2]Section 1.3(a)(ii) provided:

6(k) (the "lockup/dribble" provision) of the purchase agreement contained restrictions on both the amount and timing of Spilker's sale of stock.[3]

In January 1996 Video Update notified Spilker that it intended to file a registration statement with the Securities Exchange Commission in contemplation of a public offering. In response, Spilker requested that Video Update register his shares

> [I]n the event that the aggregate consideration received by the Sellers in connection with the sale . . . in bona fide arm's length transactions of any of the Video Update Shares . . . during the period commencing March 14, 1996 and ending September 14, 1996 does not equal or exceed the amount determined by multiplying the number of Sold Shares by $12.00 . . . , then Video Update shall, at its sole option, either, (i) pay the Stockholder by cash, check or wire an amount equal to, or (ii) issue the Stockholder additional shares of Common Stock (with the same registration rights afforded the Video Update Shares as set forth in Section 6 of this Agreement . . .) with an aggregate market value on the date of issuance equal to: the amount by which the Contemplated Proceeds exceeds the Sales Proceeds (the "Deficiency Payment"). Video Update shall deliver the Deficiency Payment, if any, on or before October 31, 1996.

[3]Section 6(k) provided (emphasis added):

> It shall be a condition precedent to the obligations of Video Update to take any action pursuant to this Section that the Holders (i) agree not to sell, transfer, pledge, hypothecate or encumber the Video Update Shares held by them for a period of four (4) months from the date of this Agreement, and (ii) following the four (4) month anniversary of this Agreement, agree not to sell or transfer more than 10,000 Video Update Shares in any single business day and not to sell or transfer more than 25,000 Video Update Shares within any five (5) business day period.

so that he could sell them. At Video Update's request, Spilker executed a "registration election form" in which he agreed to honor the lockup provision. The Video Update shares were registered on February 15, 1996. Between March 15, 1996 and May 24, 1996, Spilker sold 239,163 shares of Video Update stock for less than $12.00 per share. During April and May 1996 he sold 2 blocks of 30,000 shares each within 5 business days.

In August 1996 Video Update filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201 in federal district court to determine its liabilities under the purchase agreement. Video Update sought a judicial declaration that Spilker's obligation under Section 6(k) of the purchase agreement was an express condition precedent to Video Update's obligation to make the deficiency payment, that Spilker breached the purchase agreement by selling in excess of 25,000 Video Update shares within a five (5) business day period, in violation of the lockup/dribble provision, and that Video Update is excused from performance under Section 1.3(a)(ii), and has no obligation to pay attorney's fees. Videoland and Spilker filed an answer asserting affirmative defenses (waiver, disproportionate or extreme forfeiture) and a counterclaim against Video Update for a deficiency payment in excess of $1.2 million.

The parties filed cross-motions for summary judgment. In January 1998 the district court granted summary judgment in favor of Videoland and Spilker. The district court regarded this case as one of contract interpretation and applied Minnesota law pursuant to a choice-of-law provision in the purchase agreement. The district court noted that the parties did not dispute that Spilker sold his stock for less than the $12 per share guarantee or that some of Spilker's sales of stock exceeded the quantity and frequency limitations set forth in the lockup/dribble provision. By relying upon the "condition precedent" language in Section 6(k), Video Update argued that Spilker's obligation under the lockup/dribble provision was an express condition precedent to its obligation to make any deficiency payment under Section 1.3(a)(ii). However, the district court relied on the phrase "this Section" to conclude that Section 6 referred

only to stock registration matters and not the deficiency payment which was contained in Section 1.3(a)(ii). Slip op. at 5. For this reason, the district court rejected Video Update's argument that the lockup/dribble provision was a condition precedent to any deficiency payment.

The district court also reasoned that, because the terms of the contract were unambiguous, extrinsic evidence regarding the negotiation process was barred by the parol evidence rule. Id. at 6 (noting that, under Minnesota law, if the terms of a contract are clear and unambiguous, parol evidence is inadmissible to alter the terms of the contract, and that an integrated agreement cannot be altered by any prior oral agreement).

The district court rejected Video Update's argument that the subsequent conduct of the parties-- specifically Spilker's letter about D.H. Blair's offer[4] -- was clear and convincing evidence that would justify altering the meaning of the purchase agreement. Id. The district court decided that the letter only showed that Spilker wanted Video Update to agree that, if he sold his shares to D.H. Blair for less than $12 per share, Video Update would still pay the deficiency amount.

The district court awarded Videoland and Spilker attorney's fees and expenses pursuant to Section 5.2 of the purchase agreement and pre-judgment interest (from October 31, 1996 at 18%) pursuant to Section 5.4 of the purchase agreement.

---

[4]In April 1996, D.H. Blair (the underwriter of Video Update's two initial public offerings and a "market maker" of Video Update stock) approached Spilker with an offer to purchase all of Spilker's outstanding Video Update shares. Spilker wrote to Video Update about this offer and asked Video Update to amend the purchase agreement to remove the resale limitations and to apply the deficiency payment provision to the shares that maybe sold to D.H. Blair. Video Update refused to waive the resale limitations, and Blair's offer fell through.

In subsequent orders, the district court denied Video Update's post-judgment Motion to Alter and Amend the Judgment[5] (although the district court noted that Video Update could pay the deficiency in additional shares of stock pursuant to the purchase agreement) and reduced the amount of attorney's fees by 25% (because some entries for fees were vague and ambiguous, and others appeared unrelated to this litigation), for a total of $73,080.00.  This appeal followed.

## Discussion

**Contract Interpretation**

Video Update argues on appeal that the district court erred in interpreting the purchase agreement.  Specifically, Video Update argues that the district court erroneously held that the purchase agreement unambiguously provided that compliance with the lockup/dribble provision is not an express condition precedent to Video Update's obligations under the deficiency payment provision.

A condition precedent is "any fact except mere lapse of time which must exist or occur before a duty of immediate performance by the promisor can arise" under the contract.  Carl Bolander & Sons, Inc. v. United Stockyards Corp., 298 Minn. 428, 431, 215 N.W.2d 473, 475 (1974).  Video Update argues that compliance with the lockup/dribble provision is an express condition precedent to Video Update's obligation to make any deficiency payment under Section 1.3(a)(ii).  Video Update argues that because Spilker's sales of stock violated the lockup/dribble provision on 7 of 29 days,

---

[5]Video Update  disputed several of the charges on Videoland and Spilker's fee schedule which was supposed to only be attorney's fees.  Video Update also requested the district court change the date from which interest accrued on its deficiency payment.

Spilker breached the purchase agreement. Therefore, Video Update concludes, it is relieved of its obligation to pay the deficiency payment (a total of $1,220,403.00).

First, Video Update argues that the lockup/dribble provision is an express condition precedent because it is consistent with the language and structure of the purchase agreement. The lockup/dribble provision states in pertinent part: "It shall be a condition precedent to the obligations of Video Update to take any action pursuant to this Section . . . ."

Second, Video Update argues that the lockup/dribble provision is an express condition precedent because it is consistent with the course and sequence of events which were contemplated by the purchase agreement. Spilker would not have been able to sell his shares until after they had been registered. Video Update argues that the only obligation on Video Update's part that arose after Spilker sold his Video Update shares was Video Update's obligation to make the deficiency payment.

Third, Video Update argues that its interpretation is consistent with the purpose of the lockup/dribble provision. Video Update argues that this provision was meant to protect Video Update from unnecessary increases in the deficiency payment which might arise from the sale of large quantities of Video Update's stock by insiders on the market. By restricting Spilker's ability to sell large blocks of his Video Update shares, Video Update would avoid short-term over-reaction by the market which would drive down the price of Video Update stock. Moreover, Video Update argues that this provision was also meant to protect other investors from precipitous declines in the value of their Video Update stock. Not only was Video Update preparing to "go public," but it also wanted to keep up the price of its stock to minimize the amount of any deficiency payment due Spilker.

Finally, Video Update argues that its interpretation of the lockup/dribble provision is consistent with the parties' subsequent conduct. In early April 1996,

before the sale of the first block of 30,000 shares, D.H. Blair (the underwriter of Video Update's two initial public offerings and a "market maker" of Video Update stock) approached Spilker with an offer to purchase all Spilker's outstanding Video Update shares. Spilker wrote to Video Update about this offer and asked Video Update to amend the purchase agreement to remove the resale limitations and to apply the deficiency payment provision to the shares that may be sold to D.H. Blair. Video Update refused to waive the resale limitations, and the offer fell through. Video Update argues that Spilker's counsel acknowledged that a sale in violation of the lockup/dribble provision (as the sale to D.H. Blair would have been) could result in a forfeiture by Spilker of his right to collect on the deficiency payment.

In particular, Video Update argues that it makes no sense to limit the lockup/dribble provision, which limits the quantity and frequency of <u>sales</u> of stock, to the registration of shares, as the district court did, instead of Spilker's <u>sales</u> of shares. Video Update argues that because the registration of shares would (and did) occur <u>before</u> Spilker sold any shares, Spilker's sales of shares in compliance with the lockup/dribble provision could not have been a condition precedent to Video Update's obligation with respect to registration of shares. Video Update argues that the parties clearly intended that the registration of Spilker's shares would occur before he sold his Video Update shares. If Spilker's shares were not registered, he would not have a market to sell them.

We hold that the purchase agreement is clear and unambiguous. We need only look to the written purchase agreement to ascertain the specific terms to which the parties agreed. We need not consider what the parties intended to be written. <u>See Carl Bolander & Sons, Inc. v. United Stockyards Corp.</u>, 298 Minn. at 431, 215 N.W.2d at 475 (citing <u>Hicks v. Mid-Kansas Oil & Gas Co</u>., 182 Okla. 61, 76 P.2d 269 (1938)). No express language links Section 6(k) to Section 1.3(a)(ii). The condition precedent language in Section 6(k) refers to Video Update's obligations "pursuant to this

Section," that is, Video Update's obligations with respect to the registration of stock under Section 6(k) and not Spilker's obligations under the lockup/dribble provision.

Because there is no ambiguity in the language of the purchase agreement, and because the purchase agreement contains a contract integration provision, the parol evidence rule bars any evidence contradicting these terms of the purchase agreement. See, e.g., Material Movers, Inc. v. Hill, 316 N.W.2d 13, 17 (Minn. 1982); Norwest Bank Minnesota v. Midwestern Mach. Co., 481 N.W.2d 875, 881 (Minn. Ct. App. 1992). Compliance with Section 6(k) was not a condition precedent to Video Update's obligation to make the deficiency payment.[6]  Accordingly, we hold that the district court did not err in its interpretation of the purchase agreement.

**Attorney's Fees**

Video Update  next argues that the district court erred in awarding attorney's fees and expenses to Videoland and Spilker.   The district court awarded Videoland and Spilker attorney's fees and expenses pursuant to Section 5.2 of the purchase agreement, which provided in part:

> Video Update agrees to defend, indemnify and hold harmless Videoland . . . and Stockholder and their successors and assigns, from and against any and all damages, losses and expenses suffered by Sellers resulting from (i) any breach of warranty or agreement or non-

---

[6]Because this court agrees that the lockup/dribble provision is not a condition precedent to Video Update's obligation to make the deficiency payment, we need not discuss Video Update's alternative argument based upon the doctrine of disproportionate or extreme forfeiture under which a condition may be excused when its non-occurrence or failure would cause extreme forfeiture or disproportionate forfeiture.  Restatement (Second) of Contracts § 229 (1979).

fulfillment of any obligation on the part of Video Update under this Agreement . . . .

Video Update maintains that Section 5.2 of the purchase agreement only applies to third-party claims, not claims between the principals, so it cannot be used to shift litigation costs  in the present case.  In addition, Video Update  argues that the district court erroneously included attorney's fees and expenses in the term "damages" because Minnesota law requires specific language to shift litigation costs.  See Seifert v. Regents of the University of Minnesota, 505 N.W.2d 83, 87 (Minn. Ct. App. 1993). In Seifert, the court held that a party is entitled to attorney's fees and costs if the drafted agreement explicitly states attorney's fees are available.  See Id.  In the present case, Section 5.2(i) of  the purchase agreement states: "Video Update . . . agrees to . . . indemnify . . .  Videoland . . .  and [Spilker] . . . from and against any and all damages, losses and expenses suffered by Videoland and [Spilker]  resulting from (i) any breach of warranty or agreement or non-fulfillment of any obligation on the part of Video Update under this Agreement . . . ."  This language is not limited to third-party claims. Video Update's failure to pay the deficiency payment when it was due on October 31, 1996, constituted a "non-fulfillment of [an] obligation on the part of Video Update." Videoland and Spilker suffered damages as a result of Video Update's breach of the purchase agreement.  We hold that the district court did not err in awarding attorney's fees and expenses to Videoland and Spilker pursuant to the purchase agreement.

**Pre-judgment Interest**

Video Update also argues that the district court erred in awarding pre-judgment interest to Videoland and Spilker pursuant to Section 5.4 of the purchase agreement, which provided in part that "[a]ny amounts not paid by the Indemnifying Party when due under this Section shall bear interest from the Due Date thereof until the date paid at the lower of eighteen percent (18%) per annum or the highest rate allowed by law." The district court awarded pre-judgment interest from October  31, 1996, the day that

the deficiency payment was due pursuant to the purchase agreement. Video Update argues that Videoland's claim was not "established" before January 26, 1996, the date summary judgment was granted, as required by Section 5.4 of the purchase agreement. We disagree. Minnesota allows pre-judgment interest in the case of a liquidated claim or a sum certain or "where a claim is unliquidated but ascertainable by computation or reference to generally recognized standards such as market value and the claim does not depend upon any contingency." Moosbrugger v. McGraw-Edison Co., 284 Minn. 143, 160, 170 N.W.2d 72, 82 (1969). Here, the amount of the deficiency payment, if not a liquidated claim, was ascertainable by computation. Video Update did not have to wait until the district court granted summary judgment in order to know the amount of the deficiency payment. Therefore, we hold that the district court did not err in awarding pre-judgment interest from the date on which the deficiency payment was due under the purchase agreement.

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.