**STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Petitioner, Appellant,**

v.

**CINCINNATI INSURANCE
COMPANY, Respondent.**

**No. C4–02–396.**

Court of Appeals of Minnesota.

Oct. 1, 2002.

Owen L. Sorenson, Stringer & Rohleder, Ltd., St. Paul, MN, for appellant.

Rolf E. Sonnesyn, Chandelle Lee Heyer, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and HARTEN, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Respondent insurance company refused to arbitrate a car accident because its insured instructed it not to provide coverage, pay or defend the action. Appellant

insurance company moved to compel arbitration, and the district court denied the motion. Appellant contends that (1) the district court erred by denying its motion to compel respondent to arbitrate; (2) respondent's refusal to pay the claim based on the instruction of the insured violates public policy and the Unfair Claims Practices Act, Minn.Stat. § 72A.201, subd. 8(3) (2000); (3) appellant is entitled to attorney fees under the arbitration agreement; and (4) the proceedings in the underlying action against respondent's insured should be stayed pending conclusion of arbitration. We affirm.

## FACTS

This case arises out of a motor-vehicle accident. Glen Meyer hired Michelle Miller's husband, Loren, to plow his driveway. As Loren was plowing Meyer's driveway, Michelle drove in the driveway to speak to Loren. At about the same time, Meyer backed out of his garage, drove forward around his rock garden, and then, while looking at and waving to Loren, collided with Michelle's vehicle.

At the time of the accident, the Millers were insured by appellant State Farm Mutual Insurance Company (State Farm). State Farm paid for the property damage to Michelle's vehicle, but Michelle also sustained out-of-pocket expenses as a result of the policy's $500 deductible. State Farm attempted to recover from Meyer, the amounts it had paid to Michelle and Michelle's out-of-pocket expenses. When Meyer refused to disclose the identity of his insurer, State Farm and Michelle sued him. State Farm later learned that Meyer was insured by respondent Cincinnati Insurance Company (Cincinnati), but Meyer had instructed Cincinnati not to provide coverage, pay the claim, or defend him. Cincinnati stood ready to defend and indemnify Meyer, but Meyer elected not to invoke his liability coverage and instead decided to defend the matter himself.

State Farm filed a petition for arbitration pursuant to its intercompany arbitration agreement with Cincinnati. While Cincinnati admitted that it was a signatory to the agreement it argued that the agreement only takes effect if Cincinnati's insured invokes coverage.

State Farm moved to compel Cincinnati to arbitrate. The district court denied State Farm's motion, concluding that (1) the disputed claim does not fall within the scope of the arbitration agreement; (2) Cincinnati is under no obligation to defend, indemnify, or arbitrate on its insured's behalf because its insured had not tendered defense of the claim to it; (3) the insurance policy between Cincinnati and its insured did not confer third-party-beneficiary status on State Farm; and (4) the Minnesota Unfair Claims Practices Act does not affect State Farm's claim. State Farm appeals.

## ISSUES

I. Did the district court err by denying appellant's motion to compel arbitration?

II. Did respondent's refusal to pay the claim based on the instruction of its insured violate public policy and the Unfair Claims Practices Act, Minn. Stat. § 72A.201, subd. 8(3) (2000)?

III. Did the district court err by denying appellant's request for attorney fees under the terms of the parties' intercompany arbitration agreement?

IV. Did the district court err by denying appellant's motion to stay the underlying proceeding between appellant's insured and respondent's insured?

## ANALYSIS

*Motion to Compel Arbitration*

This court reviews the district court's denial of a motion to compel arbi-

tration de novo. *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995). When considering a motion to compel arbitration, the court's inquiry is limited to determining (1) whether a valid arbitration agreement exists; and (2) whether the dispute falls within the scope of the arbitration agreement. *Amdahl v. Green Giant Co.*, 497 N.W.2d 319, 322 (Minn.App. 1993).

 State Farm argues that the district court erred by denying its motion to compel Cincinnati to arbitrate. The parties do not dispute that a valid arbitration agreement exists. We are asked to determine whether the dispute falls within the scope of the arbitration agreement. *See id.* Whether or not a party has agreed to arbitrate a particular dispute is a matter of contract interpretation, which this court reviews de novo. *Stiglich Constr., Inc. v. Larson*, 621 N.W.2d 801, 802 (Minn.App. 2001) (citation omitted), *review denied* (Minn. Mar. 27, 2001).

State Farm and Cincinnati are parties to an intercompany automobile-insurance arbitration agreement. The agreement requires arbitration of any questions or disputes which may arise from any automobile physical damage subrogation or property damage claim not in excess of $100,000. The parties concede that this is such a claim. But the agreement expressly does not apply and arbitration is not required as to claims against which a company asserts a defense of lack of coverage on grounds other than delayed notice, no notice, or noncooperation.

 Cincinnati argues that the agreement does not apply to the present claim because its insured never tendered to it the defense of the claim, and thus, Cincinnati's duty to defend and indemnify its insured never materialized. We agree with Cincinnati. [T]ender of defense is a condition precedent to the creation of an obligation to indemnify. *Seifert v. Regents of Univ. of Minn.*, 505 N.W.2d 83, 87 (Minn.App.1993), *review denied* (Minn. Oct. 28, 1993). Likewise, the tender of defense is a condition precedent to the duty to defend. *Pedro Cos. v. Sentry Ins.*, 518 N.W.2d 49, 51 (Minn.App.1994). To constitute tender of defense, the insurer must have knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh, Pennsylvania*, 643 N.W.2d 307, 320 (Minn.App.2002) (quotation omitted). State Farm attempts to bring the dispute under the terms of the parties' arbitration agreement by arguing that Meyer's failure to tender defense of the claim to Cincinnati amounts to non-cooperation. The duty of the insured to cooperate with its insurer, however, arises after a tender of defense.

State Farm also asserts that the district court erred by concluding it was not a third-party beneficiary of the arbitration agreement signed by Cincinnati. Even if State Farm were to establish that it was a beneficiary to the arbitration agreement, the condition precedent required for the arbitration agreement to take effect, a tender of defense, still has not occurred.

Because Meyer has not tendered the defense to Cincinnati, the district court did not err by denying State Farm's motion to compel arbitration.

*Unfair Claims Practices Act*

 State Farm argues that Cincinnati's refusal to pay the claim based on the instruction of the insured violates public policy and Minnesota's Unfair Claims Practices Act, Minn.Stat. § 72A.201, subd. 8(3) (2000). We disagree.

The act defines various acts by an insurer that constitute unfair settlement practices, including denying a liability claim

because the insured has requested that the claim be denied. *Id.* But the act provides for administrative enforcement and does not create a private cause of action. *Morris v. American Family Mut. Ins. Co.*, 386 N.W.2d 233, 235 (Minn.1986). Even if the act had some impact on State Farm's private claim against Cincinnati, which it does not, Cincinnati's actions do not constitute an unfair practice. Although Meyer instructed Cincinnati not to pay the claim, tendering of the defense was a condition precedent to this provision taking effect. In other words, Meyer's actions could not constitute requesting that the claim be denied when he had not yet tendered the defense to Cincinnati.

■ State Farm also asserts that Cincinnati's actions in refusing to arbitrate and in denying the claim based on the request of their insured is against public policy. Cincinnati has taken a legally permissible stance in this matter, however, and it is not authorized to defend and indemnify against the instructions of its insured. Therefore, we conclude there is no violation of public policy.

*Attorney Fees*

■ State Farm argues that the district court erred by denying its request for attorney fees under the arbitration agreement. It contends that Cincinnati has not acted in good faith, in violation of the Minnesota Unfair Claims Practices Act. We disagree.

■ "The construction and effect of a contract are questions of law for the court". *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn.1979). The parties' arbitration agreement provides that

[i]n the event that, after removal, the case is discovered to have been properly placed in arbitration and the Applicant refiles the case in arbitration, the Respondent must reimburse Applicant for all reasonable legal expenses and court costs incurred because of the improper objection to jurisdiction.

Because Meyer did not tender the defense, and Meyer's actions did not amount to noncooperation under the agreement, the dispute does not fall under the arbitration agreement. Even if it did fall within the agreement, however, Cincinnati has not made an *improper* objection to jurisdiction. We conclude the district court did not err by determining that State Farm's request for attorney fees was unwarranted.

*Stay of Proceedings*

State Farm asserts that because this dispute falls under the parties' arbitration agreement, the district court erred when it denied its motion to stay the underlying proceeding between the insureds. We disagree. While a court must stay the proceedings and compel arbitration of claims subject to arbitration under a valid agreement, Minn.Stat. § 572.09 (2000), no such duty to arbitrate arose here. Accordingly, the district court did not err by denying State Farm's motion to stay the underlying proceeding.

## DECISION

This dispute does not fall within the parties' intercompany arbitration agreement because Meyer refused to tender the defense to Cincinnati. Absent this condition precedent, Meyer's actions did not amount to noncooperation under the agreement, and Cincinnati did not have a duty to arbitrate. The district court, therefore, did not err by denying State Farm's motions to compel arbitration, to award attorney fees, or to stay the underlying proceeding.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent.

On the issue of compelling arbitration, I would require Cincinnati to go to arbitration, award State Farm reasonable attorney fees for having to bring this matter to court, and remand to the district court to stay the underlying lawsuit between Michelle Miller and respondent's insured Glen Meyer.

To me, it is questionable law, and *bad public policy*, egregious public policy, not to compel State Farm and Cincinnati to abide by the terms of their arbitration agreement. Minnesota's strong public policy of providing for public safety on our highways, as exemplified by our mandatory insurance law, Minn.Stat. § 65B.48, subd. 1 (2000), is trashed and turned over to the whims and caprice of each individual insured, in this case, Meyer, who is allowed to blithely state, I can give the benefits of my liability coverage to anyone I please and withhold it from anyone I please, and I am accountable to no one, neither the law nor the party I have injured.

I will discuss the arbitration issue first. The two insurance companies, State Farm and Cincinnati, are both signatories to an inter-company arbitration agreement. Several insurance companies belong to the arbitration agreement, the purpose of which is simple and exemplified by the facts in this case. State Farm supplies collision insurance to Michelle Miller, who sustained approximately $2,000 in property damage when Meyer drove into Miller's vehicle, which was stopped in his driveway. Miller has a $500 collision deductible. State Farm honored their policy and paid Miller the property damage minus the deductible, and pursuant to the inter-company arbitration agreement, served notice on Cincinnati that they wished to arbitrate the matter of their $1,500 out-of-pocket expense plus Miller's $500 deductible. Cincinnati refused to arbitrate and blamed it on their insured Meyer. They said Meyer had refused to tender the defense to them, had told them in no uncertain terms that he did not want coverage and would handle the matter on his own and, therefore, Gee, our hands are tied; we have to honor our policyholder's (Meyer's) request. It is worth noting that the briefs and Cincinnati's position at oral argument are replete with manifestations of good faith (obviously to avoid a bad-faith lawsuit). Cincinnati insisted time after time that there is liability coverage for Meyer and that they are ready, willing, and able to stand in and do their duty. It is just that they cannot move because Mr. Meyer doesn't want us to.

The district court and the majority bought Cincinnati's argument that tender by Meyer is such an integral part of his liability policy and the inter-company arbitration agreement that everyone's hands are tied in this matter until Meyer gives the go-ahead, and he has not done so yet. I suggest that is bad law. The automobile-subrogation-arbitration agreement is in evidence, and all parties agree on its wording. It says in pertinent part that

[s]ignatory companies are bound to forego litigation and in place thereof submit to arbitration any questions or disputes which may arise from any automobile physical damage subrogation or property damage claim not in excess of $100,000.

This article shall not apply to

any claim as to which a company asserts a defense of lack of coverage on grounds *other than*

(1) delayed notice

(2) no notice

(3) *noncooperation* [.]

(Emphasis added.) The majority confuses noncooperation, which is specifically not a bar to arbitration, with the word tender. As to noncooperation, Meyer's actions *are the classic essence of noncooperation.* The record shows that Meyer, from the start, refused to disclose the identity of the liability insurance company to Miller. That forced Miller to apply to State Farm under her own collision policy for coverage. Thus, State Farm and Miller had to sue Meyer for the approximate $2,000 in property damage, meaning State Farm's payment of approximately $1,500 plus Miller's $500 deductible.

Meyer continued to refuse to cooperate in any way and continued to refuse to notify his insurance company, Cincinnati. When State Farm learned on its own that Cincinnati provided automobile insurance coverage for Meyer and contacted Cincinnati to start the arbitration process, Meyer instructed Cincinnati not to pay the claim, not to cover him, and not to defend him. The record is clear as to Meyer's stubborn position. He has such a questionable driving record that Cincinnati informed him that even on this $2,000 fender-bender, he was in danger of having his insurance with Cincinnati not renewed. It can be safely assumed that Meyer would then have to go into the open market and pay even more to get new insurance coverage (as stated, Minnesota has a mandatory insurance law, which is a condition precedent to obtain vehicle license plates and to be allowed to drive legally). Thus, Meyer, to keep his insurance with Cincinnati (who is complicit in this scheme), arbitrarily takes the position that he is going to withhold his liability coverage from Miller and force her to deal with him directly. Meyer is an attorney. The file reflects that his actions in instructing Cincinnati not to defend him, and his countersuit against the Millers for his property damage, are delaying tactics to hopefully wear down Miller and State Farm and get them to settle for approximately fifty cents on the dollar. The record reflects an offer by Meyer to settle State Farm's and Miller's claim for fifty percent, meaning $1,000. Meyer has calculated that $1,000 out of his own pocket is less expensive than not getting renewed by Cincinnati and running the risk of having to get another insurance company to cover him.

To put it bluntly, Meyer's pecuniary interests are not part of the inter-company arbitration agreement to which State Farm and Cincinnati are signatories. Cincinnati concedes that Meyer is not. To cover *exactly* this type of situation, the inter-company arbitration agreement excludes as a defense noncooperation. As stated, you could not find a better definition of noncooperation than Meyer's actions. This entire matter resolves itself simply, peacefully, and with judicial economy if Cincinnati steps forward and arbitrates a $2,000 fender-bender. State Farm stipulated on the record that if Cincinnati goes to arbitration, it and the Millers will drop their lawsuit in district court for property damage. That would in no way prejudice Meyer's counterclaim for property damage, as that is a stand-alone issue. He has a right to sue Miller and see if he can prevail. He does not need Cincinnati's permission to sue Miller. He simply has to take his case into court and proceed.

The issue of tender on which the district court and the majority hang their analysis is not before us. The inter-company arbitration agreement specifically excludes noncooperation as an issue. In another lawsuit, not ours, it is possible that Cincinnati and Meyer might have a tender issue. Assume that Miller had extensive property damage and personal injuries to the point where Meyer wanted coverage. Assume Meyer's actions, lack of tender, and other

noncooperative actions were egregious. Cincinnati, as any insurance company, would have the right to go into district court and seek a declaratory judgment that they had no obligation to defend and indemnify their insured because cooperation with the insurance company is a boilerplate phrase in every insurance contract written. Obviously, even a self-interested insurance company has a right to expect its insured to give it the details of what happened so they are in a position to evaluate coverage, legal tactics, protect the insured's interests, and evaluate the potential claim for loss-reserve purposes. That is not our case. Between Cincinnati and Meyer on another set of facts, lack of tender and noncooperation could be an issue. *See, e.g., Rieschl v. Travelers Ins. Co.,* 313 N.W.2d 615 (Minn.1981) (insurer brought action seeking to declare that insured breached cooperation clause of policy). Between State Farm and Cincinnati, noncooperation is not an issue. It is written right out of the arbitration agreement and cannot constitute a bar to arbitration.

Now to the issue of public policy. This refusing-to-tender tactic (entirely at the whim of the insured) increases the litigation burden on the court system and results in payments to an injured party taking significantly longer than if the insurance companies were involved. This defeats the principles behind the No Fault Act, including injured parties receiving prompt payment of benefits and easing the burden of litigation on courts. *See* Minn.Stat. § 65B.42(4) (2000). Notably, another purpose of the No Fault Act is

> [t]o create a system of small claims arbitration to decrease the expense of and to simplify litigation, and to create a system of mandatory intercompany arbitration to assure a prompt and proper allocation of the costs of insurance benefits between motor vehicle insurers[.]

Minn.Stat. § 65B.42(4). Meyer is not a signatory to the arbitration agreement. His participation, or lack thereof, does not affect the agreement between two insurers to arbitrate.

Judicial economy, public policy, and the intent of mandatory auto insurance require that signatories to the inter-company auto-insurance arbitration agreement comply with the letter and spirit of their agreement and the mandatory auto-insurance statute.

Assume that Meyer caused both property damage and personal injury to Miller or hit a pedestrian walking in the vicinity. Under Cincinnati's and Meyer's theory, he could still refuse coverage to save himself money in future auto premiums and force the injured victims to take their chances on whether any judgment would be collectible.

It is *bizarre* to put the issue of who has insurance in the hands of a driver whose record with his own company is so questionable that over a routine $2,000 fenderbender with no personal injuries, the company stands ready not to renew his policy. The majority's decision permits Meyer to avoid the problem that he, not Miller, created, simply by snapping his finger and saying, I don't want insurance on this claim! *See* Minn.Stat. § 645.17(1) (2000) (stating legislature does not intend absurd result). Minnesota's mandatory auto-insurance law is effectively eliminated if any driver can opt out whenever he feels it is advantageous to do so.

According to the Minnesota Department of Public Safety, Office of Traffic Safety, [a]t the end of the 2001 calendar year, 3,685,499 people held Minnesota driver licenses and 4,376,815 motor vehicles were registered in the state. Minnesota Dep't of Pub. Safety, *Minnesota Motor Vehicle Crash Facts* (2001).

It is beyond comprehension that 3.6 million different individuals control Minnesota's mandatory liability-insurance law without any legislative standards or accountability of any kind! It is egregious public policy to give each individual driver, after requiring them to carry liability insurance to drive legally in this state, the power to vest pocket their liability insurance; bestow it on those people that they like and in those situations that they want to; but withhold it from injured victims they do not like in other situations, as Meyer is doing. Even Cincinnati concedes that Meyer is doing this to avoid the possibility of them not renewing his automobile insurance because of his past driving record. I ask one simple question in this dissent. Is the letter and the spirit of Minnesota's mandatory liability-insurance law to protect bad drivers or injured victims?

I dissent. I would reverse the ruling of the district court and compel Cincinnati to proceed to arbitration. I would award State Farm reasonable attorney fees for having to go to district court and then this court to compel arbitration. I would remand to the district court to stay the property-damage lawsuit of State Farm and Miller against Meyer, and Meyer's property damage counterclaim against Miller until State Farm and Cincinnati have finished arbitration. I would instruct the district court to then allow Meyer to proceed on his counterclaim against the Millers for his property damage.

This described sequence gives a reasonable interpretation to not a difficult word, noncooperation. It serves the purpose and the public policy of the inter-company arbitration agreement, serves the strong public policy of the State of Minnesota as evidenced by the No–Fault Act and the mandatory insurance law, allows Meyer to proceed on his property-damage claim in a court of law, and judicial economy and integrity are furthered. Meyer and Cincinnati, as of now, mock both.