**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellant,**

v.

**CINCINNATI INSURANCE COMPANY, Respondent.**

No. C4–02–396.

Supreme Court of Minnesota.

July 31, 2003.

---

Suzanne Wolbeck Kvas, Stringer & Rohleder, Ltd., St. Paul, MN, for State Farm.

Rolf E. Sonnesyn, Chandelle L. Heyer, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, MN, for Cincinnati Ins. Co.

## OPINION

HANSON, Justice.

Appellant State Farm Mutual Automobile Insurance Company (State Farm) paid for property damage to the vehicle of its insured, Michelle Miller, resulting from a collision with a vehicle driven by Glen Meyer, the insured of Respondent Cincinnati Insurance Company (Cincinnati). State Farm served on Cincinnati a Petition for Arbitration through Arbitration Forum, Inc., pursuant to an intercompany Automobile Subrogation Arbitration Agreement to which both State Farm and Cincinnati are signatories. When Cincinnati refused to arbitrate, contending that it provided no coverage because Meyer had instructed Cincinnati to not defend or indemnify, State Farm filed a motion in district court under Minn.Stat. § 572.09(a) (2002) for an order compelling arbitration. The district court denied the motion, holding that Meyer's refusal to tender the defense to Cincinnati precluded arbitration, and the court of appeals affirmed. We reverse.

On February 24, 2001, Meyer was involved in a car accident with Miller. The damage to Miller's vehicle amounted to $2,044.33, which was paid by State Farm to the extent it exceeded Miller's $500 deductible. Meyer refused to reveal the identity of his insurance provider. According to an affidavit executed by Meyer, Cincinnati informed him that any insurance payment on his behalf would result in nonrenewal of his insurance coverage. Meyer had informed Cincinnati that he would decline coverage, negotiate with State Farm independently, and pay any damages out of pocket. State Farm requested that Meyer pay for the damage incurred to Miller's vehicle. Meyer offered to pay half of the total damages to Miller's vehicle, believing that Miller was partially responsible for the accident.

State Farm brought suit against Meyer to recover for the damage resulting from the accident. State Farm subsequently confirmed its belief that Cincinnati provided Meyer's insurance. State Farm and Cincinnati are both parties to an arbitration agreement, which would normally require arbitration of claims, such as this, that involve a minor accident with no personal injury. State Farm made a motion in district court under Minn.Stat. § 572.09(a) to compel Cincinnati to resolve the dispute through arbitration, pursuant to the arbitration agreement. The court

denied the motion. The court of appeals affirmed the district court, concluding that an insured must tender a defense of a claim as a condition precedent to compelling arbitration under an intercompany arbitration agreement. *State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co.*, 651 N.W.2d 542, 545 (Minn.App.2002).

We review de novo a district court's determination concerning the scope of an arbitration agreement. *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn.1995). State Farm and Cincinnati agree that they are parties to an agreement to arbitrate claims arising from accidents with minor damages of the type incurred here. The parties dispute whether the arbitration agreement mandates that Cincinnati submit the claim to arbitration despite Meyer's request that Cincinnati not defend or indemnify the claim.

State Farm argues that the arbitration agreement applies because Cincinnati's only defense to coverage, that Meyer has requested that Cincinnati not defend or indemnify him, amounts to "noncooperation," and that the arbitration agreement excludes a defense to coverage based on noncooperation. The arbitration agreement includes the following provision:

> Signatory companies are bound to forego litigation and in place thereof submit to arbitration any questions or disputes which may arise from any automobile physical damage subrogation or property damage claim not in excess of $100,000.
>
> This Article shall not apply to:
> * * * *
> (b) any claim as to which a company asserts a defense of lack of coverage on grounds other than
> > (1) delayed notice
> > (2) no notice
> > (3) noncooperation

Cincinnati argues that the arbitration agreement does not apply because Meyer never tendered defense of the claim. Both the district court and the court of appeals held that a tender of defense is a prerequisite to an insurer's duty to defend or indemnify, that such a tender is likewise a prerequisite to an insured's duty to cooperate, and that the failure of Meyer to tender the defense therefore could not be noncooperation. We disagree.

The mandatory insurance scheme of the Minnesota No–Fault Automobile Insurance Act would be seriously undermined if each insured had the right to opt out of coverage after the accident occurred. One important purpose of the No–Fault Act is to provide the remedy of arbitration for property damage claims, and to reduce the number of cases filed in court. Minnesota Statutes § 65B.42 (2002) provides:

> The detrimental impact of automobile accidents on uncompensated injured persons, upon the orderly and efficient administration of justice in this state, and in various other ways requires that sections 65B.41 to 65B.71 [Minnesota's No–Fault Automobile Insurance Act] be adopted to effect the following purposes:
> * * * *
> (4) to speed the administration of justice, to ease the burden of litigation on the courts of this state, and to create a system of small claims arbitration to decrease the expense of and to simplify litigation, and to create a system of mandatory intercompany arbitration to assure a prompt and proper allocation of the costs of insurance benefits between motor vehicle insurers[.]

Permitting the insured to opt out of coverage would deny the other party and his or her insurer the remedy of arbitration and compel them to file an action in district court.

Further, the No-Fault Act requirement, that every vehicle is covered by insurance, would be defeated if an owner could simply opt out of coverage after an accident had occurred. Thus, the Act requires every owner of a motor vehicle to maintain insurance by making it a crime to fail to provide proof of such insurance (Minn.Stat. § 169.791, subd. 2 (2002));[1] authorizes the revocation of the owner's driver's license for failure to provide proof (Minn.Stat. § 169.792, subd. 7 (2002)); and makes it a crime for an owner to allow anyone to operate the vehicle without insurance and for a driver to operate the vehicle without insurance (Minn.Stat. § 169.797, subds. 2–3 (2002)). An owner of a motor vehicle cannot satisfy these requirements by obtaining proof of insurance before an accident but then withholding that insurance after the accident. In fact, the Act requires that the insurance specifically provide that liability becomes absolute with the occurrence of the accident and cannot thereafter be cancelled or annulled by the actions of the insured. Minn.Stat. § 65B.49, subd. 3(3)(a) (2002).

■ Cincinnati argues that it is merely responding to the reasonable request of a policyholder not to participate in the resolution of a claim where that participation may result in the loss of the policyholder's insurance coverage. We, recognize that some policyholders may attempt to privately negotiate settlements with the owner or insurer of the other vehicle. But any desire of a policyholder to retain control of the claim, so as to avoid any adverse impact on the underwriting of the insurance policy, does not release his or her insurer from its obligations under the arbitration agreement.

■ Similarly, Cincinnati's concern, that it might breach some duty to Meyer if it arbitrates this claim against Meyer's specific directions, is unwarranted. Under the No-Fault Act, an insurer is specifically authorized to settle the claim of another insurer for indemnity, with or without the consent of its insured. *Id.* Thus, Cincinnati has no legal obligation to honor its insured's request not to arbitrate the claim; to the contrary, Cincinnati has a contractual obligation to honor State Farm's demand for arbitration.

Accordingly, we reverse the court of appeals and remand to the district court with instructions to enter an order compelling arbitration and staying State Farm's action against Meyer. Further, to the extent the district court's denial of State Farm's claim for attorney fees under the arbitration agreement was based on the conclusion that Cincinnati had no duty to arbitrate absent a tender of defense by Meyer, we direct the district court to reconsider that claim in light of this opinion.

Reversed and remanded.

## DISSENT

GILBERT, Justice, dissenting.

I respectfully dissent from the majority opinion and would affirm the court of appeals. This case involves a small property damage claim resulting from an accident where the fault between two drivers is in dispute. Glen Meyer has obtained the mandatory no-fault insurance coverage and as an insured he is not bound to arbitrate the claim that is brought by Michelle Miller. Meyers' carrier may pursue resolution of the claim on its own, but nothing in the No-Fault Act or the insurance contract prohibits the reparations obligor and

---

1. Although Minn.Stat. § 65B.48, subd. 3 (2002) permits self-insurance, the requirements are substantial and Meyer did not claim that he attempted to qualify for self-insurance.

338

its insured from allowing an insured to contest such a claim. Furthermore, the liability coverage provided by Cincinnati has not been cancelled or annulled by agreement between the reparation obligor (Cincinnati) and Meyer, its insured. *See* Minn.Stat. § 65B.49, subd. 3(3)(a) (2002). Cincinnati stands behind whatever liability and damage for which Meyer is ultimately adjudicated as being responsible.

There are arbitration provisions within Minnesota's No–Fault Arbitration Insurance Act. The majority incorrectly concludes that a third-party claimant (as opposed to an insured and the reparation obligor) has been provided with the remedy of arbitration for property damage claims. To the contrary, Minn.Stat. § 65B.42 does "create a system of small claims arbitration to decrease the expense of and to simplify litigation." Minn.Stat. § 65B.42(4) (2002). However, this provision provides for arbitration procedures concerning claims by an insured against the insured's reparation obligor for collision damage coverage. *See* Minn.Stat. § 65B.525, subd. 1 (2002). Likewise, there is mandatory intercompany arbitration of certain claims as required in section 65B.42(4), but these provisions are not at issue in this case. However, there is no statutory or contractual requirement that Miller or Meyer resolve their dispute through arbitration. Thus, contrary to what the majority holds, the purpose of a system of small claims arbitration would not be frustrated by allowing an insured to prevent the operation of the No–Fault Act by refusing to tender.

Furthermore, Meyer here has not unilaterally opted out of the mandatory insurance scheme after an accident has occurred. He merely wants to litigate the damage issue, which he has also offered to pay directly once the amount and liability have been determined. Obviously, if he

does not make that payment, Cincinnati is required to make that payment. The insured's actions are motivated because of premium considerations and possible cancellation of his policy, if he has Cincinnati handle the claim directly. One would think that up to at least the amount of the (non-subrogation) deductible of $500 an insured would be freely able to litigate that issue, notwithstanding the "Automobile Subrogation Agreement."

The majority recognizes that insureds do privately negotiate settlements with the owner of other vehicles. At oral argument State Farm admitted that it knows many of its insureds do the same thing and they have a policy of allowing such private settlements. This not only helps its insured by keeping premiums down and policies in effect, but also saves administrative costs and expenses of the reparation obligor of otherwise setting up the claim file, investigating and litigating or arbitrating such claim and possibly making payments on those claims. It appears to be understood by everybody in the industry that this is a widespread practice and it is not even in dispute that the reparation obligor is never released from ultimate responsibility.

Accordingly, I would affirm the court of appeals and allow this practice to continue. The majority is elevating form over substance. Its legal conclusion is premised on an inaccurate assumption about arbitration requirements between two insureds and elevates the subrogation arbitration agreement between two reparation obligors over the separate rights of two insureds.